KENNETH P. TAYLOR, Petitioner-Appellant, *v.* GAYLE FRANZEN *et al.*, Respondents-Appellees.

, Fifth District    No. 80-3

Opinion filed February 20, 1981.—Supplemental opinion filed on denial of rehearing May 28, 1981.*

---

* A supplemental opinion was filed on denial of rehearing. That opinion is found at 93 Ill. App. 3d 1152.

Richard J. Habiger, of Prison Legal Aid, of Carbondale, and Sandra K. Delzell, law student, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Melbourne A. Noel, Jr., Mark L. Rotert, and Anita Donath, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Kenneth P. Taylor, petitioner-appellant, was committed to the Department of Corrections on March 5, 1974, for a term of four to 10 years. During the course of his commitment Taylor accumulated good time credits (Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3) and participated in a work-release program at the Southern Illinois Community Correction Center at Carbondale. On February 8, 1979, Taylor was charged with violating a condition of his work-release agreement. One year of petitioner's good time credit was revoked because of his misconduct, but 90 days were later restored. The decision revoking petitioner's good time was affirmed by the Administrative Review Board. Taylor petitioned the Circuit Court of Randolph County requesting a writ of *habeas corpus* or *mandamus* to require restoration of his good time. The circuit court dismissed Taylor's petition. Taylor requests that we grant summary judgment in his favor and order the restoration of his good time.

Petitioner was participating in a work-release program on January 31, 1979. One of the conditions of the program read: "I will participate in no form of exploitation, abuse, threat, force, violence, or act of aggression against another person." It was on the 31st of January that petitioner allegedly raped the victim, and thus violated the aforementioned agreement. Petitioner was not prosecuted for the alleged rape.

The incident occurred at approximately 10 p.m. on the Southern Illinois University campus in the Faner Building where the victim was employed as a teaching assistant and graduate student in the geography department. Petitioner's work-release program placed him in frequent contact with the geography department where the victim worked.

After the incident, the victim received treatment at Memorial Hospital. The hospital staff reported the rape to the campus police which eventually led to the supervisor of the correctional center filing a report on February 8, 1979, recommending that petitioner's work-release status be revoked. A hearing was held on February 9, 1979, to determine whether Taylor had violated the terms of his work-release agreement. Petitioner was provided with a notice of the hearing, told of the nature of the charge against him, and allowed the assistance of counsel. Taylor requested that two witnesses be called, but his request was refused. The hearing panel reached no decision and continued the hearing for further investigation.

On March 7, 1979, the hearing panel again met to consider petitioner's case. Unlike the previous hearing, petitioner was not given any notice, was not allowed to appear, nor was counsel for petitioner allowed to appear.

The hearing panel found that Taylor had violated his work-release agreement and ordered him transferred to Menard Correctional Center.

The panel recommended the revocation of petitioner's work-release status and three years and nine months of petitioner's good time. Subsequently, respondent-appellee, Gayle Franzen, revoked one year of petitioner's good time but later restored 90 days.

■■ We note that although petitioner has been released from prison, he is serving a mandatory supervised release which ends on January 17, 1983. However, if petitioner's good time was improperly revoked then he may be entitled to an earlier termination of his mandatory term of supervision. Therefore, this appeal has not been mooted by Taylor's release from prison.

Section 3—6—3(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(a)(1)) provides in part that "[t]he Department of Corrections shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department * * *." The Code goes on to provide for the promulgation of rules and regulations governing the revocation of good conduct credit. Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(c).

The Department of Corrections has established regulations pursuant to its statutory authorization. We are primarily concerned with two regulations, sections 804 and 1201 of the Administrative Regulations of the Department of Corrections, Adult Division. Section 804 details the procedures that must be followed before a resident's good conduct credit can be revoked. Section 1201 sets out the procedures that must be used to revoke a resident's work release status. The Department is bound to follow its own regulations (*Margolin v. Public Mutual Fire Insurance Co.* (1972), 4 Ill. App. 3d 661, 281 N.E.2d 728); thus, our initial inquiry is whether the hearings given Taylor comply with the applicable regulations. We begin by summarizing sections 804 and 1201.

Section 804(II)(A) lists 28 "chargeable offenses" for which a resident's good time credit can be revoked. Before good time credit is revoked, section 804(II)(B)(3)(c) requires that the resident be accused of committing a particular chargeable offense in a resident disciplinary report. Section 804(II)(C) establishes the procedures that must be followed in determining whether a resident committed a chargeable offense. Section 804(II)(C)(2) provides that "[t]he resident must receive written notice of the facts and charges against him/her no less than 24 hours prior to the hearing * * *." Section 804(II)(G)(3) requires that the notice inform the resident that he has a right to appear at the hearing and present a statement; that he may present physical exhibits; that he has a right to request that individuals be interviewed and called as witnesses; and that he may ask that witnesses be questioned along lines suggested by him. Section 804(II)(G)(8) requires, if evidence is excluded, that a written reason be given for its exclusion. Section 804(II)(G)(9) provides that a

resident may submit questions for witnesses but limits any right to cross-examine or confront witnesses. Questions submitted by a resident must be asked at the hearing unless found to be irrelevant, cumulative or pose a threat to safety. If witnesses are excluded, a written reason must be given. Section 804(II)(G)(10) limits the resident's right to counsel. Section 804(II)(G)(13)(b) provides that a hearing may be continued for up to 30 days for further investigation.

Section 1201 outlines the procedures required in revoking a resident's work-release status. Section 1201(I) provides that "AR804 is incorporated in this Administrative Regulation by reference, and nothing in this Regulation should be construed to prohibit further disciplinary action in accordance with the provisions of AR804, *provided that the conditions of AR804 are complied with*." (Emphasis added.)

The Administrative Review Board affirmed the revocation of petitioner's good time credit. The board found that the hearing was conducted expeditiously "in light of the emotional state of the witness as reflected by the documents presented before this Board." The documents relied on by the Board are not part of the record before us. The Board's decision went on to address the failure to call petitioner's witnesses and the failure to give reasons for their exclusion, finding that, "[w]hile the Administrative Review Board does, of course, *recommend* that reasons for such a failure be stated on the written record, the failure to do so in this particular case was harmless \* \* \*. The right to call witnesses at a Community Correctional Center Revocation Hearing is limited, in the Board's opinion." (Emphasis added.) The Board also stated that "\* \* \* the chargeable offense was extremely clear \* \* \*."

After reviewing the record, we cannot agree that the hearing panel's violations of section 804 were harmless.

The specific violations claimed by Taylor are that he was given no notice, was not permitted to be present and was denied the assistance of counsel at the second hearing on March 7, 1979; the hearing panel did not interview or call petitioner's witnesses nor did it state any reasons for not interviewing or calling the witnesses; the panel did not state a reason for its action and did not explain why exonerating evidence was ignored; the panel did not consider a chargeable offense against the petitioner; the panel failed to provide petitioner with a fair and expeditious hearing; and the Board considered documents which petitioner was not allowed to read. In addition to violations of the regulations, petitioner alleges that his work-release agreement is unconstitutionally vague and that the review of his case was unfairly prejudiced.

■■ Taylor argues that the alleged violations of administrative regulations constitute a violation of due process. While disregard of an administrative

regulation by an agency may constitute a due process violation (*United States ex rel. Accardi v. Shaughnessy* (1954), 347 U.S. 260, 98 L. Ed. 681, 74 S. Ct. 499), the process that is due under a State agency's administrative rules and the minimum constitutional safeguards required by the fourteenth amendment's due process clause are not always identical. (*Durso v. Rowe* (7th Cir. 1978), 579 F.2d 1365.) Thus, we address petitioner's allegations that applicable regulations were violated independent of his Federal constitutional claims.

Although the Board found the chargeable offense extremely clear, it declined to elaborate which of the 28 offenses specified in section 804(II)(A) was charged. The defendant was charged with violating a condition of his work-release agreement which was adequate to revoke petitioner's work-release status under section 1201. However, if Taylor's good time was to be revoked, section 804 should also have been complied with as stated in section 1201(I). Respondents contend that Franzen had the discretion to revoke Taylor's good time pursuant to section 813(B). However, the exercise of discretion under section 813(B) is contingent on compliance with section 804.

■■ Section 804 requires that one of 28 offenses must be specified in the resident disciplinary report charging the resident with misconduct. The requirement of charging one of the specific offenses is not a formality which may be ignored. It is an important step which affects the rights of the resident. (*South v. Franzen* (1980), 90 Ill. App. 3d 595, 413 N.E.2d 523.) Thus, the failure to accuse Taylor of a chargeable offense was a violation of section 804.

■■ A second violation of section 804 occurred when the hearing panel refused to call petitioner's witnesses without giving written reasons for their exclusion. Section 804(II)(G)(9) states that if witnesses are excluded reasons must be given. The Administrative Review Board's opinion, as well as respondent's brief, failed to note the mandatory nature of 804(II)(G)(9). The Board's conclusion that petitioner's right to call witnesses was limited is in conflict with section 1201(F)(4).

■■ Section 1201(F)(4) provides in part that, "* * * the resident may request the panel to interview witnesses with relevant knowledge and pose certain questions to them; *such request shall ordinarily be granted unless found to be excessive or unreasonable.*" (Emphasis added.) Respondents point out that the panel's decision was based on discussions which were not made part of the record. Respondents argue that the panel could infer that Taylor's witnesses had no relevant testimony because they lacked firsthand knowledge of the charged offense. We believe this argument leaves too much to be assumed. The reason why written findings are necessary is to prevent arbitrary decisions and to

provide an effective basis for reviewing an agency's action. (*North Shore Sanitary District v. Pollution Control Board* (1972), 2 Ill. App. 3d 797, 277 N.E.2d 754.) The fact that witnesses did not observe this incident does not mean that they had no relevant knowledge. It is commonplace for non-occurrence witnesses to give relevant testimony by way of circumstantial evidence or to impeach the credibility of another witness. Thus, the failure to call petitioner's witnesses could not be assumed harmless where the record was devoid of any reason for their exclusion in violation of section 804(II)(G)(9) and contrary to section 1201(F)(4).

The third problem that we perceive is that petitioner was given no notice of the hearing held on March 7, 1979. Section 804(II)(G)(2) requires that a resident must receive written notice of "* * * the facts and charges being presented against him/her no less than 24 hours prior to the hearing." Respondents assert that no constitutional or statutory provision requires that notice be given twice but they fail to address the applicability of section 804(II)(G)(2).

■■ ■ Generally, an administrative body should not proceed *ex parte* without notice to all parties. (*Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270.) Section 804(II)(G)(2) requires a second notice to advise petitioner of facts being presented at the second hearing that were not presented at the first hearing. Also, notice of the second hearing is required to effectuate the right to submit questions for witnesses as provided in section 804(II)(G)(9) and to insure that the 30-day limit in section 804(II)(G)(13)(b) is not violated. We note that Taylor has no right under section 804 to confront witnesses or to be assisted by counsel, but notice of the second hearing should have been provided to guarantee the other rights established in section 804.

Petitioner has alleged other errors such as the failure to explain why petitioner's testimony was discounted; the failure to provide an expeditious hearing; the Board's consideration of documents not revealed to petitioner; the constitutionality of his work-release agreement; and the fairness of the Board's review of his case. We need not address the merits of these arguments because our analysis has already revealed three serious errors by the hearing panel which justify relief.

Petitioner's hearing was inadequate as measured by the standards established in section 804. Petitioner argues that we should decide this case by summary disposition, but that does not appear to be appropriate. At most, Taylor is entitled to a new hearing which conforms to the requirements of section 804.

■■ We have the power to grant whatever relief may be appropriate under the circumstances, including a new hearing. (*Van Walsen v. Blumenstock* (1978), 66 Ill. App. 3d 245, 383 N.E.2d 776.) Supreme Court Rule

366(a)(5) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)) provides that a reviewing court may "* * * grant any relief, * * * that the case may require." A new hearing is the appropriate remedy to resolve petitioner's grievance.

■■ Petitioner and respondents have argued the propriety of granting relief either by means of *habeas corpus* or *mandamus*. Inasmuch as we have decided that a new hearing should be held, *mandamus* is the correct remedy to carry out our mandate. In *People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201, 195 N.E.2d 651, the supreme court held that *mandamus* was appropriate to compel the Parole and Pardon Board to hold a hearing to determine a prisoner's eligibility for parole. Similarly, the supreme court implied that *mandamus* would be appropriate to compel prison officials to follow their internal rules. (*People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 265 N.E.2d 144, *cert. denied* (1971), 402 U.S. 976, 29 L. Ed. 2d 141, 91 S. Ct. 1679.) The officials of the Department of Corrections have a nondiscretionary duty to comply with the requirements of section 804. Therefore, *mandamus* is the correct means to enforce compliance with those provisions.

Respondents argue that part of petitioner's reply brief should be struck because it questions the sufficiency of the evidence supporting the Administrative Review Board's decision for the first time on appeal. Respondents also argue that Greer should be dismissed from the appeal because he no longer has custody of Taylor. In light of our limited holding that the case should be remanded for a new hearing before the Prison Review Board, we are not required to resolve these additional issues.

The trial court erred when it dismissed Taylor's petition. Therefore, for the reasons given in this opinion, the judgment of the Circuit Court of Randolph County is reversed and the cause is remanded to the Circuit Court of Randolph County with directions to issue a writ of *mandamus* requiring the Prison Review Board to hold a new hearing consistent with this opinion.

Reversed and remanded with directions.

HARRISON and WELCH, JJ., concur.