UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal P. Lane [sic], Eugene M. Venegone, Richard De Robertis and James Erving, Respondents.

UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal P. Lane [sic], Richard De Robertis, Eugene Venegone and James Erving, Respondents.

UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal P. Lane [sic], Richard De Robertis, Eugene M. Venegone and James Erving, Respondents.

UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal P. Lane [sic], Richard De Robertis, Eugene Venegone, James Erving and Tyrone C. Fahner, Respondents. (Two Cases)

UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal Lane [sic], Richard De Robertis, Eugene Venegone, James Erving and Tyrone C. Fahner, Respondents.

UNITED STATES of America ex rel. William L. ISAAC, Petitioner,

v.

Gayle M. FRANZEN, Micheal Lane [sic], Richard De Robertis, Eugene M. Venegone, James Erving and Tyrone C. Fahner, Respondents.

UNITED STATES of America ex rel.
William L. ISAAC, Petitioner,

v.

Micheal P. LANE [sic], Richard De Robertis, Eugene Venegone, James Erving and Tyrone C. Fahner, Respondents.

UNITED STATES of America ex rel.
William L. ISAAC, Petitioner,

v.

Michael P. LANE, Richard W. De Robertis, Travis Wheaton, James Erving and Tyrone C. Fahner, Respondents.

Nos. 80 C 4095, 80 C 4657, 80 C 5088, 81 C 76, 81 C 77, 81 C 203, 81 C 904, 81 C 1349 and 81 C 3249.

United States District Court,
N. D. Illinois, E. D.

Feb. 10, 1982.

William L. Isaac, pro se.

Thomas E. Holum, Asst. Atty. Gen. of Ill., Chicago, Ill., for respondents in cases 80 C 4095, 4657, 5088.

Kenneth A. Fedinets, Asst. Atty. Gen. of Ill., Chicago, Ill., for respondents in cases 81 C 76, 77, 203, 904.

## MEMORANDUM OPINION

WILL, District Judge.

Petitioner William L. Isaac, a prisoner at the Stateville Correctional Center of the Illinois Department of Corrections, brings these nine petitions seeking issuance of writs of habeas corpus pursuant to 28 U.S.C. § 2254. Each petition alleges numerous due process violations in the course of one or more prison disciplinary proceedings against petitioner. Because a question of law common to each of these petitions is dispositive, we have consolidated them for purposes of decision.

Two petitions, 81 C 1349 and 81 C 3249, come before us for preliminary consideration pursuant to Rule 4 of the Rules Governing Section 2254 Cases. The state has filed a response to the remaining petitions in the form of either a motion for summary judgment, or a motion to dismiss, or in the alternative, for summary judgment. The motions filed by the state contend that the procedures accompanying the imposition of disciplinary sanctions upon petitioner were constitutionally sufficient and seek to have the petitions dismissed on the merits. Before reaching the merits of petitioner's claim, however, we must first consider an issue left unaddressed by the state: whether petitioner has exhausted his available state court remedies as required by 28 U.S.C. § 2254(b) and (c).[1] Because we find that petitioner has not met the threshold requirement of exhaustion of state remedies, we dismiss the petitions.

## I.

▮ The requirement that a state prisoner exhaust the remedies available to him

1. 28 U.S.C. § 2254 provides in pertinent part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure the question presented.

in state court is a prerequisite to filing an application for a writ of habeas corpus. Tracing its origins back to *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the judicially-created doctrine of exhaustion is premised on considerations of comity. The rule of exhaustion is designed primarily to minimize federal intrusion upon the coextensive power of state courts to decide federal constitutional questions that arise during the course of state criminal proceedings. As explicated in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963):

> [I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.... Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass on the matter.

*Id.* at 419–20, 83 S.Ct. at 838–39, *quoting Darr v. Buford*, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). The limitations on the exercise of federal habeas corpus jurisdiction embodied in the doctrine of exhaustion are now codified in 28 U.S.C. § 2254.

In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court made clear that the exhaustion requirement imposed by the habeas corpus statutes applies with equal force to a suit challenging state administrative action affecting the length of a prisoner's confinement. In *Preiser*, three state prisoners sought an injunction to restore good-conduct credits that they had lost as a result of prison disciplinary proceedings. Although plaintiffs had brought their suits under 42 U.S.C. § 1983, the Court held that section 2254, with its requirement of exhaustion of state remedies, was their exclusive federal remedy because the nature of the relief they sought—an earlier release from confinement—fell within the traditional scope of habeas corpus. *Id.* at 487, 93 S.Ct. at

1835. In rejecting any attempt to evade the exhaustion requirement by a suit under section 1983, *Preiser* specifically recognized that the doctrine of federal-state comity is as relevant to federal review of administrative decisions by state prison authorities as it is to federal review of state judicial proceedings.

> The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct errors made in the internal administration of their prisons.

*Id.* at 492, 93 S.Ct. at 1837.

 Given the importance of the policy considerations expressed in the exhaustion requirement, the state's failure in this case to seek dismissal of the petitions on exhaustion grounds does not relieve the court of its duty to ensure compliance with the dictates of 28 U.S.C. § 2254(b) and (c). Only special circumstances justify deviation from the congressionally-mandated exhaustion requirement. *See Baldwin v. Lewis*, 442 F.2d 29, 35 (7th Cir. 1971). The limited circumstances that foreclose a federal court from raising the issue of exhaustion *sua sponte* are an explicit waiver of the exhaustion requirement by the state or a considerable expenditure of judicial resources prior to consideration of the issue of exhaustion. *United States ex rel. Lockett v. Illinois Parole and Pardon Board*, 600 F.2d 116 (7th Cir. 1979). Neither of those factors is present in the cases now before us. Thus, the state's failure to raise the issue of exhaustion does not relieve us from initiating our own inquiry into this important question affecting federal-state comity. We therefore consider whether Illinois provides petitioner with an adequate and available remedy to challenge the loss of good-conduct credits in a prison disciplinary hearing.

## II.

 An applicant for federal habeas corpus relief has not exhausted his state remedies "if he has the right under the law of

the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The petitions make clear that although petitioner exhausted his administrative remedies under the prison grievance procedure provided by the Illinois Department of Corrections ("Department"), he had not sought any form of judicial relief in state court prior to initiating these actions.

■ We find, however, that petitioner had and continues to have two potential avenues for relief in the state courts. Illinois courts have recognized both habeas corpus and mandamus as proper remedies for prisoners who seek to challenge the revocation of good-conduct credits in prison disciplinary hearings. Petitioner's failure to pursue these state judicial remedies may be excused only if the remedies are "so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano,* —— U.S. ——, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981).

The Illinois Habeas Corpus Act ("Act"), Ill.Rev.Stat.1979, ch. 65, §§ 1, *et seq.,* provides petitioner with one possible means of redress for his claims of constitutional deprivations. In *People ex rel. Ponder v. Bensinger,* 57 Ill.2d 55, 310 N.E.2d 161 (1974), the Illinois Supreme Court entertained an original jurisdiction petition for a writ of habeas corpus brought by a prisoner who sought to challenge the constitutional adequacy of the procedures used to revoke twenty-seven months of good-time credits in three separate disciplinary hearings. Although the court in *Ponder* found the prisoner's challenge to be without substantive merit, at least one Illinois court has effectuated the release of a prisoner on habeas corpus because of constitutional violations that occurred in a disciplinary hearing. *South v. Franzen,* 90 Ill.App.3d 595, 46 Ill. Dec. 83, 413 N.E.2d 523 (1980).

Judicial interpretation of the Act, however, significantly limits its availability to state prisoners who seek restoration of good-conduct credits revoked for purposes of prison discipline. Under section 22 of the Act, a state court may order the discharge of a prisoner held under the process of a legally constituted court only for one of seven specified reasons. The only authorized cause for discharge that would be applicable to a habeas corpus petition contesting the adequacy of a disciplinary proceeding is:

2. Where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to discharge.

Ill.Rev.Stat.1979, ch. 65, § 22(2). But in *People ex rel. Johnson v. Pate,* 47 Ill.2d 172, 265 N.E.2d 144 (1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1679, 29 L.Ed.2d 141 (1971), the Illinois Supreme Court held that release on parole does not constitute "discharge" within the meaning of section 22 of the Act. *Id.* at 176, 265 N.E.2d at 147. This narrow construction of "discharge" renders the state habeas corpus remedy meaningless for any prisoner who seeks something less than an immediate and unconditional release from the terms of his sentence.

Whether petitioner falls within that category of prisoner who seeks simply to challenge the duration rather than the fact of his confinement, and therefore could not make the challenge in a state habeas corpus suit, cannot be ascertained from the record before us. At issue in these actions is the revocation of twenty-seven months of good-conduct credits. Restoration of these credits apparently would result in petitioner's discharge from prison subject to a term of mandatory supervised release, the functional equivalent of parole for a prisoner convicted under the determinate sentencing system that took effect in Illinois in 1978.[2]

---

2. Petitioner is serving concurrent determinate sentences of six years each for aggravated kidnapping (two counts), deviate sexual assault (two counts), and indecent liberties with a child (two counts). Under the Illinois Code of Corrections, a prisoner sentenced to a determinate term must serve an additional term of manda-

tory supervised release once he has completed service of his sentence of commitment, less the amount of good-conduct credits he has earned. *See* Ill.Rev.Stat.1979, ch. 38, §§ 1003-3-3(c), 1005-8-1(d). As of June 20, 1980, petitioner was scheduled for supervised mandatory release on September 17, 1980. Motion for Sum-

As the court held in *Pate*, however, that does not constitute a discharge for purposes of the state habeas corpus act. Although restoration of the twenty-seven months of good-conduct credits could entitle him to final discharge, on this record it is uncertain.[3]

Ordinarily, the petitioner bears the burden of demonstrating compliance with the exhaustion requirement. *Baldwin*, 442 F.2d at 35. Thus, were habeas corpus the only state remedy available, we would require petitioner to provide us with further information concerning what effect restoration of the contested good-conduct credits would have on his sentence in order to determine if petitioner's challenge to that revocation is cognizable in state court under the Act. But, as we intimated earlier, petitioner has another remedy available to him under state law. Recent decisions in three Illinois appellate districts recognize mandamus as an appropriate remedy to compel prison officials to comply with due process requirements in a prison disciplinary hearing. Because our analysis of these decisions leads us to the conclusion that the state mandamus remedy provides petitioner with an available and adequate corrective process for the claims he asserts, we need not also conclusively determine if the futility exception to the exhaustion requirement excuses him from pursuing his state habeas corpus remedy.

### III.

In *People ex rel. Stringer v. Rowe*, 91 Ill.App.3d 134, 46 Ill.Dec. 582, 414 N.E.2d 466 (1980), the first reported Illinois decision to indicate a willingness to consider a prisoner's direct challenge to prison disciplinary proceedings, the Third District entertained an appeal from the denial of a pro se petition for declaratory judgment. As construed by the appellate court, the petition contested the constitutional adequacy of Illinois Department of Corrections Administrative Regulation 804 ("A.R. 804"), which is the regulation that governs the imposition of discipline upon Illinois prisoners,[4] as well as two specific disciplinary proceedings that resulted in the revocation of Stringer's good-conduct credits. The court rejected Stringer's claims and held that both A.R. 804 and the challenged disciplinary hearings satisfied the minimum due process requirements set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 49 L.Ed.2d 935 (1974). *Id.* at 137, 46 Ill.Dec. at 585, 414 N.E.2d at 469. Although it assumed jurisdiction without discussion, by reaching the merits of petitioner's claim, the court implicitly recognized a prisoner's right to bring suit in state court to attack on constitutional grounds the sufficiency of prison disciplinary proceedings.

In *Taylor v. Franzen*, 93 Ill.App.3d 758, 48 Ill.Dec. 840, 417 N.E.2d 242, *aff'd on rehearing*, 93 Ill.App.3d 1152, 51 Ill.Dec. 645, 420 N.E.2d 1203 (1981), the Fifth District directly decided the jurisdictional question left unaddressed in *Stringer*. The court in *Taylor* expressly found mandamus to be a proper judicial remedy to compel prison officials to comply with the procedural requirements imposed by A.R. 804. *Id.* at 765, 51 Ill.Dec. at 650, 417 N.E.2d at 247. The petitioner in *Taylor* disputed the loss of good-conduct credits in a disciplinary hearing conducted at a community correctional center on the ground that the hearing failed to comport with either the requirements of constitutional due process or A.R. 804. Declining to review the federal constitutional claims, the court found that the Department had violated its own ad-

---

mary Judgment, 80 C 4657, Exhibit A–4. Petitioner's continued confinement indicates that the loss of good-conduct credits has delayed the start of his mandatory supervised release term.

**3.** Although the Illinois Prisoner Review Board retains the authority to grant an early discharge, a prisoner does not become entitled to a final order of discharge until after successful completion of parole or, for prisoners serving determinate terms, mandatory supervised release. *See* Ill.Rev.Stat.1979, ch. 38, § 1003–3–8.

**4.** Relevant portions of A.R. 804 are reprinted in *Stringer v. Rowe*, 616 F.2d 993, app. 1002–05 (7th Cir. 1980). ·

ministrative regulations in at least three respects and remanded the case back to the trial court with directions to issue a writ of mandamus requiring the Illinois Prisoner Review Board to accord petitioner a new hearing. On rehearing, the court of appeals reasserted its holding that mandamus was the correct remedy and noted that Illinois law empowered the Prisoner Review Board to shorten Taylor's term of mandatory supervised release in the event it concluded that Taylor's original hearing resulted in the wrongful revocation of his good-conduct credits.

■■ Although *Taylor* rested its decision exclusively on state law grounds and pretermitted consideration of the federal constitutional claims raised in the mandamus petition, we do not interpret the case to mean that mandamus is not a proper vehicle for raising constitutional claims. The general federal policy of avoiding a constitutional question when the merits of a case may be resolved on nonconstitutional grounds is likewise followed by Illinois courts. *Aurora East Public School District v. Cronin*, 92 Ill.App.3d 1010, 1021, 48 Ill. Dec. 88, 97, 415 N.E.2d 1372, 1381 (1981). Thus, the court's finding that deficiencies in the disciplinary hearing violated Taylor's rights under A.R. 804 obviated the need to address the constitutional issues.[5] We assume that Illinois courts will consider and determine constitutional issues in appropriate cases.

The question whether mandamus would lie to redress alleged violations of the federal constitution was directly considered by the Fourth District in *Tedder v. Fairman*,

93 Ill.App.3d 948, 49 Ill.Dec. 447, 418 N.E.2d 91 (1981). In that case, the court entertained the consolidated appeals of two Illinois prisoners. One sought to compel prison officials to provide him with medical care for alleged psychological problems; the other sought an interprison transfer to protect him from gang-related violence. The court held that the prisoners' allegations, liberally construed, were sufficient to give rise to claims under the Eighth Amendment of the United States Constitution. Reasoning that state government authorities had no discretion to violate constitutionally-protected rights, the court further found that the statutory mandamus procedure was available to compel prison officials to comply with duties owed under the federal constitution. *Id.* at 956–57, 49 Ill.Dec. at 454, 418 N.E.2d at 98. *See generally Overend v. Guard*, 98 Ill.App.3d 441, 443, 53 Ill.Dec. 940, 942, 424 N.E.2d 731, 733 (1981).

■■ From the foregoing cases, we conclude that the state mandamus procedure provides petitioner with a remedy for his federal constitutional claims and that resort to state mandamus before coming to federal court is not a futile exercise. Although recognition of mandamus as a remedy to challenge the revocation of good time in a prison disciplinary proceeding is of recent origin, those state courts that have considered the question give us no reason to assume that Illinois courts will not reach the substantive merits of petitioner's claims. Furthermore, the absence of an Illinois Supreme Court ruling with respect to the availability of the mandamus remedy

---

**5.** As *Taylor* noted, the process due under state administrative regulations may be greater than that required by the Fourteenth Amendment. *Id.* at 763, 48 Ill.Dec. at 843, 417 N.E.2d at 245. Such is the case with Illinois administrative regulations governing the imposition of prison discipline. A.R. 804 incorporates not only the minimal procedural safeguards required in the context of a prison disciplinary proceeding by *Wolff, supra; see Hayes v. Thompson*, 637 F.2d 483, 491 (7th Cir. 1980), but also additional procedural protections not guaranteed by constitutional due process. *See United States ex rel. Houston v. Warden*, 635 F.2d 656, 658–59 (7th Cir. 1980). By implication, the state man-

damus remedy, which may be invoked to compel an agency to abide by its own regulations as well as the federal constitution is more encompassing than the federal habeas corpus remedy, which reaches only alleged violations of constitutional rights. *Cf. United States ex rel. Hoover v. Franzen*, 669 F.2d 433 (7th Cir. 1982) (federal court is without jurisdiction to consider state law claims in habeas corpus proceeding). Given the broader scope of review afforded by the mandamus remedy, the state court presumably offers prisoners a more advantageous forum in which to litigate claims pertaining to revocation of good-conduct credits.

is not in itself sufficient to relieve petitioner from the burden of complying with the exhaustion requirement. *See United States ex rel. Williams v. Morris,* 594 F.2d 614, 619 (7th Cir. 1979), *on remand,* 483 F.Supp. 775 (N.D.Ill.), *aff'd,* 633 F.2d 71 (7th Cir. 1980), *cert. granted,* 452 U.S. 914, 101 S.Ct. 3047, 69 L.Ed.2d 417 (1981). Nor does the exhaustion requirement compel us to predict with certainty the final outcome of an available state court remedy. *See Moore v. Duckworth,* 581 F.2d 639, 644 (7th Cir. 1978). Federal courts will not overlook failure to pursue a particular remedy unless the remedy is shown to be "clearly deficient," *Duckworth v. Serrano, supra,* —— U.S. at ——, 102 S.Ct. at 19, or "demonstrably ineffective." *Echevarria v. Bell,* 579 F.2d 1022, 1026–27 (7th Cir. 1978). Judged by those standards, petitioner's failure to pursue his state mandamus remedy precludes our considering his habeas corpus petitions.

## IV.

A final question which warrants our review is whether section 2254 necessitates resort to mandamus in order to exhaust state remedies. Consideration of this issue is prompted by *United States ex rel. Morgan v. Sielaff,* 546 F.2d 218 (7th Cir. 1976). In *Morgan,* the Seventh Circuit rejected respondent's argument that mandamus was available to contest the constitutionality of commitment proceedings under the Illinois Sexually Dangerous Persons Act on the ground that the strict conditions for issuance of the writ were not present in that case. *Id.* at 222. In a footnote, the court, relying on *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), remarked that a habeas petitioner need not pursue all possible alternative state remedies as a prerequisite to seeking relief in federal courts and that mandamus was one of the suggested remedies that petitioners in *Wilwording* were not required to exhaust. *Id.* at 222 n.7. To understand the broad language contained in the *Morgan* footnote, we must analyze the Supreme Court's decision in *Wilwording.*

In *Wilwording,* Missouri prisoners brought a petition for a writ of habeas corpus in federal court to challenge living conditions and disciplinary measures. Prior to commencing suit in federal court, they had sought and were denied relief in state habeas corpus proceedings. The United States Court of Appeals for the Eight Circuit affirmed dismissal on the ground that adequate state remedies, including mandamus, were available to petitioners. *Wilwording v. Swenson,* 439 F.2d 1331, 1335 (8th Cir. 1971). The Supreme Court, in a per curiam opinion, reversed, holding in part:

> Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the state an initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights. Petitioners are not required to file "repetitious applications" in the state courts. Nor does the mere possibility of success in additional proceedings bar federal relief. Whether the State would have heard petitioners' claims in any of the suggested alternative proceedings is a matter of conjecture; certainly no available procedure was indicated by the State Supreme Court in earlier cases. Furthermore, we are not referred to a single instance, regardless of the remedy invoked, in which the Missouri courts have granted a hearing to state prisoners on the conditions of their confinement. In these circumstances § 2254 did not require petitioners to pursue the suggested alternatives as a prerequisite to taking their claims to federal court.

*Id.* at 250, 92 S.Ct. at 408 [citations omitted].

The Court's holding that section 2254 does not require habeas corpus petitioners to pursue all possible alternative state remedies before filing their federal actions is thus specifically limited to the circumstances present in *Wilwording.* Two factors were crucial to the Court's decision. First, the Court found that further applications for relief to the state courts would be repetitious since the petitioners had already presented their claims to the Missouri

courts including the Supreme Court. Second, the availability of mandamus and the other remedies suggested by respondent was purely conjectural. Therefore, *Wilwording* cannot be read to establish a rule that exhaustion of a state mandamus remedy is never required under section 2254. To find otherwise would ignore the congressional intent expressed in section 2254(c) which obligates a habeas corpus petitioner to pursue his claims in state court "by any available procedure."

Neither of the two factors that *Wilwording* found sufficient to excuse failure to exhaust is present here. Unlike the Missouri prisoners, petitioner has yet to seek any form of state judicial relief for his claims. Moreover, as discussed earlier, the availability of mandamus as a remedy to redress the claims asserted by petitioner is not conjectural but finds strong precedent in recent decisions of several Illinois courts. In these circumstances, we find that the state's substantial interest in the administration of its own prison system and the salutory policies reflected in the exhaustion requirement are best served by sending petitioner to state court to seek relief by way of mandamus.

Accordingly, we dismiss these nine petitions for writs of habeas corpus without prejudice to petitioner's right to file anew after he has exhausted his available state remedies.

Appropriate orders will enter.