THE PEOPLE *ex rel.* CLAUDE RODNEY YODER, Petitioner-Appellee, *v.*
STEPHEN L. HARDY *et al.*, Respondents-Appellants.

Fifth District   No. 82—371

Opinion filed July 7, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (A. L. Zimmer, Assistant Attorney General, of counsel), for appellants.

Kimball R. Anderson and Mary A. Martin, both of Winston & Strawn, of Chicago, and Richard J. Habiger, law student, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Respondents-appellants, Stephen L. Hardy, administrator of Menard Psychiatric Center and Tyrone C. Fahner, Attorney General of Illinois, appeal from an order of the circuit court of Randolph County granting a writ of *habeas corpus* to Claude Rodney Yoder, a resident of the Menard Psychiatric Center, Illinois Department of Corrections. On appeal, respondents contend the trial court erred in finding that Yoder's statutory good-time credits were unlawfully revoked and in ordering the Department of Corrections to restore such credits.

Claude Rodney Yoder, petitioner-appellee, was convicted of aggravated battery on May 11, 1979, and sentenced to probation. On August 28, 1979, petitioner's probation was revoked and he was sentenced to four years' imprisonment in the Illinois Department of Corrections, a term which expired April 14, 1983.

On July 21, 1980, petitioner received a resident disciplinary report which charged him with a violation of section 804(II)(A)(28) of the Administrative Regulations of the Department of Corrections, "Violating the general laws of the State or Federal government." (AR 804(II)(A)(28).) The report alleged that Yoder sent threatening letters through the United States mail in violation of the Federal postal laws. (18 U.S.C. sec. 876 (1970).) A hearing on the charge was held before the adjustment committee on July 22, 1980, at which petitioner stated that he was unprepared to defend himself. In addition, petitioner requested a short continuance, the opportunity to call witnesses, and the assistance of a staff member in the presentation and preparation of his defense. The adjustment committee denied these requests and found him guilty as charged. The committee then imposed disciplinary action consisting of six months' segregation, six months' "C-grade" status and revocation of one year of his good-conduct credits.

The letters which were the subject of the violation came to the attention of respondent, Dr. Stephen Hardy, through William V. Kauffman, Jr., executive director of the Illinois Prisoner Review Board. Some of these allegedly threatening letters were sent to the Illinois Prisoner Review Board and others were sent from their addressees to the Champaign County State's Attorney, who forwarded them to Kauffman.

On August 8, 1980, petitioner was served with a second disciplinary report. The second report again charged petitioner with violating section 804(II)(A)(28), and alleged that he sent a threatening letter through the mails to then Attorney General of Illinois, William J. Scott, on July 17, 1980. The letter was received by Assistant Attorney General Michael Vujovich, who forwarded it to the Department of Corrections on July 25, 1980. Petitioner declined to waive his right to 24 hours' notice and was brought before the adjustment committee on August 9, 1980.

At the hearing, petitioner noted that he neither knew nor sent any letters to Michael Vujovich. The committee, however, found petitioner guilty and imposed additional disciplinary action consisting of one year of disciplinary segregation, one year "C-grade" status, and the revocation of one year of good-conduct credit.

Petitioner then filed a petition for Federal *habeas corpus* relief in the United States District Court for the Northern District of Illinois. The cause was transferred to the Southern District of Illinois and assigned to the United States Magistrate, who recommended that the cause be dismissed for failure to exhaust State remedies, specifically, State *habeas corpus*. Before the recommendation was entered as an order of the court, petitioner filed his State *habeas corpus* petition. In his eight-count complaint, petitioner alleged various defects in the hearing process under which he was found guilty.

Respondents, Tyrone Fahner and Stephen Hardy, filed a motion to dismiss on January 11, 1982, which alleged that petitioner had insufficiently pleaded and was not entitled to relief. Petitioner filed a motion to strike certain portions of the motion to dismiss and further moved for admission to bail. The court denied the motion to dismiss, the motion to strike and the motion for bail, but required petitioner to amend the petition for *habeas corpus*. On March 24, 1982, petitioner filed an amended petition for writ of *habeas corpus*.

On May 6, 1982, Richard J. Habiger of the Prison Legal Aid of Southern Illinois University entered an appearance as additional counsel on behalf of petitioner. Petitioner and respondents entered into a stipulation for evidence, and the court decided the petition based upon

the stipulated evidence, pleadings and briefs. On July 23, 1982, the court found that the revocation of defendant's two years of good-conduct credit was in violation of section 804 of the Department of Corrections' Administrative Regulations. The court then ordered the Department of Corrections to restore the good time previously revoked and to release petitioner from custody provided such restoration of good time entitled him to release.

On June 29, 1982, respondents filed a notice of appeal along with a motion for emergency stay with an alternative motion for a 10-day stay to apply for a stay in this court. The court denied the emergency application for stay but granted the alternative motion to stay its order for 10 days pending application to this court. The motion for stay was ultimately denied, and petitioner was released from State custody.

At the outset, we note that although petitioner has been released from custody, he is presently serving a mandatory supervised release. This appeal, therefore, is not rendered moot because a finding that petitioner's good conduct credit was improperly revoked might entitle him to an earlier termination of such supervision. *Taylor v. Franzen* (1981), 93 Ill. App. 3d 758, 417 N.E.2d 242.

On appeal, respondents contend that the trial court erred in finding that respondents wrongfully revoked petitioner's statutory good-conduct credits and in restoring such revoked credits. Petitioner, by contrast, maintains that the trial court properly restored his revoked good-conduct credits because respondents violated his rights as set forth in the United States Constitution, Illinois statutes and the Department of Corrections' Administrative Regulations.

■ Initially, we consider petitioner's argument that he was denied due process of law under the United States Constitution. The Supreme Court has held that where a State statutorily creates a right to good time, the deprivation of which may be a sanction authorized for major misconduct, the prisoner has a liberty interest under the fourteenth amendment which entitles him to certain minimum due process procedures. (*Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.) The court in *Wolff* stated that in order to satisfy minimum requirements of due process, the prisoner must be afforded certain procedural rights which include: written notice of the claimed violation, at least 24 hours in advance of the inmate's appearance before the adjustment committee; written statement of fact finders as to evidence relied on and reasons for disciplinary action taken; and the opportunity to call witnesses and present documentary evidence in defense. Although petitioner maintains that he was denied these pro-

cedural rights in the present case, we do not believe that we need address his constitutional arguments in light of our discussion below regarding statutory and administrative procedural requirements which incorporate these constitutional safeguards.

■ Petitioner contends that the adjustment committee failed to provide him with timely written notice of the charges against him as required by section 3—8—7(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—7(c)). Section 3—8—7(c) provides:

> "A written report of the infraction shall be filed with the chief administrative officer within 72 hours of the occurrence of the infraction or the discovery of it and such report shall be placed in the file of the institution or facility. No disciplinary proceeding shall be commenced more than 8 calendar days after the infraction or the discovery of it unless the committed person is unable or unavailable for any reason to participate in the disciplinary proceeding."

Petitioner maintains that the Department of Corrections was aware of the allegedly threatening letters at least eight months before it held the first disciplinary hearing on July 22, 1980. To support his position, petitioner points to a letter dated November 20, 1979, from Dennis J. Wolff, Warden of Joliet Correctional Center, where petitioner was incarcerated, to William V. Kauffman, Jr., Executive Director of the Prisoner Review Board. In that letter, Wolff stated, "[t]his is in response to your letter of November 8, 1979, concerning correspondence containing threats made by the above-named respondent [Yoder]."

Further evidence of the Department of Corrections' knowledge of the petitioner's letters can be found in correspondence between William V. Kauffman and Stephen Hardy. In a July 7, 1980, letter, Kauffman states:

> "Finding no assurance that the federal authorities will hang some additional time on Yoder, I contacted the Department's legal staff in the person of Susan Takata. At one time, I had a similar situation in which I had suggested a good time loss, and was advised that it would not be possible to notify the inmate within 72 hours of the infraction ***."

This letter suggests that both Kauffman and Dr. Hardy were aware that it would not be possible to institute disciplinary proceedings within 72 hours as required by statute. Notwithstanding this knowledge, Dr. Hardy instructed a Menard correctional officer to prepare a disciplinary report which was filed on July 21, 1980, more than eight

days after Dr. Hardy's receipt of the letter.

Respondents contend that the trial court erred in granting the writ of *habeas corpus* because petitioner failed to demonstrate that any error in the hearing process was prejudicial. Instead, respondents make the curious argument that any procedural irregularities in the hearing were harmless in that petitioner may have lost two years good time "based on the evidence"; this approach seems to be that denial of procedural due process is meaningless. After reviewing the record, we cannot agree with respondents' assertion that the adjustment committee's violation of section 3—8—7(c) was harmless.

In *United States ex rel. Houston v. Warden* (7th Cir. 1980), 635 F.2d 656, the court stated that a prisoner was not deprived of due process of law, even though the warden and prisoner review board failed to comply with the statutory notice and hearing requirement of section 3—8—7(c) because the prisoner had not alleged that he suffered any harm from the violation. In the instant case, petitioner was clearly prejudiced by the adjustment committee's delay in notifying petitioner of the alleged infraction. If petitioner had been notified and informed of the violation, he would have been able to conform to the rules and may not have written the letter to the Attorney General which resulted in his loss of a second year of good-time credit. Rather than notify petitioner, the adjustment committee permitted him to continue writing incriminating letters while he was accumulating additional good-time credit only to have it revoked at the second hearing. We believe that the adjustment committee's failure to provide 72-hour notice and a hearing within eight days clearly constituted prejudicial harm which requires the reinstatement of lost good-time credit.

■ Petitioner next argues that respondents violated his rights as established in section 804 of the Administrative Regulations of the Department of Corrections. Section 3—6—3(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(1)) provides in part that "[t]he Department of Corrections shall prescribe rules and regulations for the early release on account of good conduct of persons committed to the Department ***." The Code goes on to provide for the promulgation of rules and regulations governing the revocation of good-conduct credit. Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(c).

Section 804 of the Administrative Regulations establishes procedures which must be followed before an inmate's good-time credit can be revoked. Among the procedural safeguards which petitioner maintains he was denied is that a "resident may upon request and if good cause is shown, be granted additional time to prepare his/her de-

fense." (AR 804(II)(G)(6).) Section 804(II)(G)(7) provides that the "resident may request witnesses in writing prior to the hearing or seek a continuance if he/she failed to make this request in a timely manner before the hearing." Section 804(II)(G)(11) requires the committee to prepare a written record summarizing the evidence and referring to evidence which convinces them that the resident did or did not commit the chargeable offense. That section further states that the committee may not simply adopt and copy the exact wording of the resident disciplinary report.

Petitioner contends that respondents violated each of the aforementioned regulations which denied him procedural due process. Specifically, petitioner maintains that the adjustment committee refused his request for a short continuance despite his statement that he was not prepared to defend himself. Petitioner maintains that a second violation occurred when the adjustment committee refused to permit him to call witnesses at the July hearing or to allow any additional time to make such request. Petitioner's third assignment of error is that the adjustment committee's reports of the July 22, 1980, and August 9, 1980, hearing do not state the basis for the committee's decision and the evidence it relied upon, but merely adopt the language of the resident disciplinary reports. Finally, petitioner claims that the adjustment committee revoked his good-time credit because of his attitude during the hearing and did not base its decision on adequate evidence.

■ In response to petitioner's allegations, respondents contend that the trial court either erred in failing to require a showing of prejudicial error at the hearing, or in holding by implication that prejudicial error had occurred. Although the order granting petitioner's relief does not specifically address the question of prejudice, we believe that a finding of prejudice is implicit in the court's decision. Furthermore, our review of the record reveals that such a finding was not against the manifest weight of the evidence.

We have previously stated that the Department of Corrections is bound to follow its own regulations. (*Taylor v. Franzen* (1981), 93 Ill. App. 3d 758, 417 N.E.2d 242.) In the instant case, the petitioner's good time was wrongfully revoked because the adjustment committee's failure to adhere to the standards set forth in section 804 deprived petitioner of an adequate hearing process. We believe the trial court acted properly in restoring petitioner's good-conduct credits.

■ Respondents argue that even if such errors occurred, the appropriate remedy is a new disciplinary hearing and not the restoration of revoked good-time credits which entitled petitioner to be released.

We believe that it is clear that a court may grant a writ of *habeas corpus* where such credit was improperly revoked pursuant to section 804. (*South v. Franzen* (1980), 90 Ill. App. 3d 595, 413 N.E.2d 523.) Furthermore, we do not believe that a new hearing would serve any meaningful purpose because petitioner's mandatory release date has passed.

Petitioner further argues that the Department of Corrections exceeded its rule-making authority in promulgating section 804(II)(A)(28), the regulation pursuant to which petitioner's good-time credit was revoked. In addition, petitioner maintains that section 804(II)(A)(28) is both vague and facially overbroad. We do not believe, however, that we need resolve these additional issues because our decision rests upon the statutory and administrative violations which we have previously addressed.

For the foregoing reasons, the order of the circuit court of Randolph County granting petitioner's writ of *habeas corpus* and restoring his revoked good-conduct credit is affirmed.

Affirmed.

JONES and KASSERMAN, JJ., concur.