JAMES P. CLAYTON-EL, Plaintiff-Appellant, v. MICHAEL P. LANE *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0059

Opinion filed August 30, 1990.

James P. Clayton-El, of Menard, appellant *pro se*.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Following the July 11, 1988, stabbing and ultimate death of an inmate at the Menard Correctional Center, where petitioner was an inmate, petitioner was removed from the general prison population and confined to segregation pending an investigation into his involvement in the crime. The next day Clayton-El, a/k/a Carmichael Morrison, was given written notice that he was under investigative status for

his possible involvement. On July 16, 1988, he was served with an investigative status report, notifying him that he was to remain under investigative status.

On August 11, 1988, a disciplinary report was served on Clayton-El, charging him with violation of Illinois Department of Corrections (IDOC) Rule 102—assaulting any person; IDOC Rule 104—dangerous contraband; IDOC Rule 105—dangerous disturbance; IDOC Rule 501—violating State or Federal law (armed violence, Ill. Rev. Stat. 1989, ch. 38, par. 33A—2); and murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1). The disciplinary report contained notice that Clayton-El's confinement was continued for the safety of the institution. Clayton-El was subsequently transferred from Menard Correctional Center to Graham Correctional Center. After his transfer, Clayton-El appeared before the Graham Correctional Center Adjustment Committee. On August 18, 1988, an adjustment committee summary was completed. Clayton-El was found guilty of the offenses charged in the disciplinary report. His statutory good time or good conduct credits were revoked for one year, he was ordered to segregation for one year, and he was demoted to "C" grade for one year.

Clayton-El filed a petition for writ of *mandamus* with the circuit court on September 29, 1988. He alleged that he was denied access to the prison law library and legal materials. He also alleged that he was not given notice of the charges against him and a hearing before the adjustment committee, in violation of his State and Federal constitutional rights, his rights under Illinois statutory law, and the rights conferred upon him by the Illinois Department of Corrections. Petitioner prayed that the court declare that his rights were violated, and enjoin defendants from detaining him in segregation and denying him access to the law library and legal materials. Defendants filed a motion to dismiss the petition. After a hearing, the circuit court granted defendants' motion. The court's record sheet entry of January 3, 1989, provides:

> "The primary issue presented by Defendant's Motion to Dismiss is whether the Petitioner in his Petition shows that he is or may be entitled to the relief requested. Petitioner relies primarily on Ch. 38, Sect. 1003—8—7(c), which requires a disciplinary hearing within 8 days of the infraction or its discovery, and on the related Department regulations. Even if Defendant had full knowledge of the offense within 8 days of its commission, the facts as plead [*sic*] by Petitioner do not give rise to a denial of due process. In this case, Petitioner was promptly notified of the charges against him. Investigation was commenced

immediately and a disciplinary report was filed in approximately 31 days. The hearing was held and the decision was rendered within 8 days of the disciplinary report. Even if the hearing was not held within the time required by statute, a proposition which is by no means certain, the case law cited by Defendant shows there is no due process violation. Furthermore, Petitioner requested a continuance of the hearing until the underlying criminal case was concluded. He cannot request a continuance and then complain that the hearing was not timely held. Motion to Dismiss is granted."

Petitioner appeals from the court's order.

■ We will first address Clayton-El's argument that as a prisoner he has a protectable liberty interest not to be placed in segregation without due process. Prison officials have broad administrative and discretionary authority over the institutions they manage, and as long as the conditions to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the due process clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. (*Hewitt v. Helms* (1983), 459 U.S. 460, 467-68, 74 L. Ed. 2d 675, 685, 103 S. Ct. 864, 869; *Montanye v. Haymes* (1976), 427 U.S. 236, 242, 49 L. Ed. 2d 466, 471, 96 S. Ct. 2543, 2547.) Although administrative segregation is the sort of confinement inmates should anticipate receiving at some point in their incarceration (*Hewitt*, 459 U.S. at 468, 74 L. Ed. 2d at 686, 103 S. Ct. at 870), petitioner contends that State statutory and regulatory measures confer a protectable liberty interest upon him which were not satisfied.

■ Clayton-El contends that the prison officials had knowledge of the offenses of which he was subsequently charged, on July 11, 1988, or at the very latest July 14, 1988, when prison officials allegedly attempted to have criminal charges instituted against him. He argues that assuming prison officials had knowledge of the alleged infractions on July 14, 1988, a disciplinary hearing was not held within eight days of that date, thereby denying him due process. He cites section 3—8—7(c) of the Unified Code of Corrections as authority:

"A written report of the infraction shall be filed with the chief administrative officer within 72 hours of the occurrence of the infraction or the discovery of it and such report shall be placed in the file of the institution or facility. *No disciplinary proceeding shall be commenced more than 8 calendar days after the infraction or the discovery of it* unless the committed person is unable or unavailable for any reason to participate in the disci-

plinary proceeding." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—7(c).

We do not agree with petitioner's conclusion that the defendants had knowledge of petitioner's alleged commission of the charged infractions on July 14, 1988. Even if the defendants attempted to have criminal proceedings instituted against petitioner by the State's Attorney's office on that date, we cannot conclude that defendants had sufficient knowledge of petitioner's alleged commission of the infractions on July 14, 1988. The fact that criminal charges were not instituted against Clayton-El on that date indicates that sufficient information was not available at that time to charge Clayton-El with any crime. The notices served on him prior to August 11, 1988, were notices advising him that he was under investigative status. There is no indication that defendants had sufficient knowledge of Clayton-El's alleged commission of infractions prior to the issuance of the disciplinary report on August 11, 1988.

Even if we were to conclude that defendants had knowledge on July 14, 1988, of Clayton-El's alleged commission of the infractions charged, we do not find that Clayton-El's due process rights were denied. He cites sections 504.30 and 504.80 of the Illinois Department of Corrections rules as conferring the protectable liberty interest which he claims he was denied when defendants failed to commence disciplinary proceedings within eight days.

Section 3—6—3(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1003—6—3(c)) provides that the "Department of Corrections shall prescribe rules and regulations for revoking good conduct credit, or suspending or reducing the rate of accumulation thereof for specific rule violations, during imprisonment." The IDOC has established rules pursuant to its statutory authority. The IDOC is bound to follow its own rules (*Taylor v. Franzen* (1981), 93 Ill. App. 3d 758, 761, 417 N.E.2d 242, 244); therefore, we will examine whether the IDOC complied with the rules petitioner refers to.

IDOC Rule 504.30 prescribes the type of situation which calls for the preparation of a disciplinary report, and prescribes the information to be included in disciplinary reports. No reference is made as to how much time is allotted for filing a disciplinary report. Rule 504.80 describes the adjustment committee hearing procedures. The only provision in Rule 504.80 which prescribes an eight-day requirement reads:

> "The Adjustment Committee hearing shall be convened but need not be concluded within eight calendar days after the commission of the offense or its discovery, unless the commit-

ted person has received a continuance or is unable to participate in the hearing." (Illinois Department of Corrections Rule 504.80(a).)

This rule, like section 3—8—7(c) of the Unified Code of Corrections, requires that proceedings convene within eight days of the offense *or its discovery.* If we assume defendants had knowledge on July 14, 1988, of petitioner's alleged commission of the infractions, there was a lapse of 35 days between July 14 and the day the adjustment committee hearing convened on August 18, 1988.

■■ ■ While prisoners retain rights under the due process clause, this in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. There must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. (*Wolff v. McDonnell* (1974), 418 U.S. 539, 556, 41 L. Ed. 2d 935, 951, 94 S. Ct. 2963, 2975.) As already noted, administrative segregation is the sort of confinement inmates should anticipate receiving at some point in their incarceration. (*Hewitt,* 459 U.S. at 468, 74 L. Ed. 2d at 686, 103 S. Ct. at 870.) IDOC Rule 504.40 in fact provides that an inmate may be detained in segregation while an investigation is pending. Clayton-El has not alleged that he suffered any harm from being placed in segregation, and we find no facts which indicate that he was harmed. We note in particular that he did not lose any good conduct credit as a result of his placement under investigative status.

■■ We find it significant that Clayton-El himself requested that disciplinary proceedings be continued pending final disposition of the criminal proceedings. Included in the record is a letter which defendants contend petitioner sent to the chairman and members of the adjustment committee at Menard Correctional Center. This letter is not dated, but it is alleged by the defendants that the letter was sent prior to the issuance of a disciplinary report which was served on petitioner August 11, 1988. Petitioner does not dispute that he sent the letter and that it was sent prior to August 11, 1988. In the letter petitioner writes, "I would be (am) requesting that this committee either suspend or hold in abeyance these [I]nstitutional proceedings until a final disposition can be had in the criminal proceedings ***." Although at some point a delay in commencing disciplinary proceedings might constitute a denial of due process, under the facts of this case no deprivation of due process occurred. See *United States ex rel. Houston v. Warden, Stateville Correctional Center* (7th Cir. 1981), 635 F.2d 656; *Wolff,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.

Clayton-El also argues that he was denied due process because the disciplinary report issued August 11, 1988, did not adequately advise him of the charges. Clayton-El was served with investigative status reports on July 12, 1988, and July 16, 1988. Both of these notified him that he was "being placed on investigative status for his possible involvement in an assault and stabbing of another inmate which occurred on 9 Gallery of the West Cell House at approximately 8:05 a.m." The August 11, 1988, disciplinary report stated:

"Offense: *** No. 102 Assaulting Any Person, No. 104 Dangerous Contraband, No. 105 Dangerous Disturbance, No. 501 Violating State or Federal Law, Armed Violence Ch. 38, 33A—1, Murder Ch. 38, 9—1

Observation: Based on the investigation report of Investigator Dave Brubaker of the Internal Investigations Unit, Springfield, and the testimony of inmate eyewitnesses, whose identities are being withheld for security reasons, inmate Morrison, A90539, violated the above Department Rules when he participated in the murder of inmate Harris, A61244, on 9 gallery of the West Cellhouse, at approximately 8:10 a.m. on July 11, 1988. NOTE: Investigator Brubaker may be contacted for the specific statements of the confidential witnesses."

■■■ Part of the function of notice is to give the charged party a chance to marshall the facts in his defense and to clarify what the charges are. (*Wolff*, 418 U.S. at 564, 41 L. Ed. 2d at 955, 94 S. Ct. at 2978.) Due process is satisfied when the accused is apprised of the charges against him with enough specificity to enable him to prepare a defense. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 28, 344 N.E.2d 456, 460.) Clayton-El was apprised of the charges against him. He was given notice of the specific crime, the date and place of the crime, and the alleged infractions stemming from that crime. The disciplinary report advised petitioner that he could obtain further information as to the statements of the confidential witnesses by contacting Investigator Brubaker. Based on the circumstances here, we do not find that Clayton-El's due process rights were violated.

■■ We also find no merit to Clayton-El's argument that he was arbitrarily denied the right to question and call witnesses. The disciplinary report served August 11, 1988, advised Clayton-El that he could obtain information as to the statements of the confidential witnesses by contacting Investigator Brubaker. The disciplinary report is signed by petitioner, and at the bottom of the report where a space is provided for the accused to request witnesses, there are written the names of two persons. The adjustment committee summary states

that the investigative report was read to petitioner, and that the statements of the witnesses were included in the report. We recognize that the unrestricted right to call witnesses from the prison population carries obvious potential for disruption. Prison officials must have the necessary discretion to refuse an inmate the unqualified right to call witnesses. (*Wolff*, 418 U.S. at 566, 41 L. Ed. 2d at 956, 94 S. Ct. at 2979.) Absent any allegation of facts or evidence in the record indicating that Clayton-El was harmed by defendants' alleged denial of his request to interview or call the two persons named in the disciplinary report, or other persons, we cannot assume that petitioner suffered any harm.

■ Finally, Clayton-El argues that the adjustment committee failed to provide an adequate fact finding basis for adjudging him guilty. There must be a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action. (*Wolff*, 418 U.S. at 564, 41 L. Ed. 2d at 955, 94 S. Ct. at 2979.) The adjustment committee summary issued August 18, 1988, states as reasons for the finding of guilty, the following:

> "Based on statements made by eyewitnesses that they saw inmate Morrison A90539 hit inmate Harris A61244 in the head with a pipe and stand on his head and let two other inmates cause the death of inmate Harris. Due to security reasons the names of the eyewitnesses are being withheld. This information was given by Mr. R. Hoffman internal affairs investigator for Menard C.C. Based upon this it is the opinion of this committee that inmate Morrison is guilty of all charges."

Petitioner has failed to state what harm, if any, has resulted because of the alleged inadequate adjustment committee summary. We find that the statement given by the adjustment committee adequately apprises petitioner of the evidence relied upon in finding him guilty, and we cannot find that Clayton-El was denied due process.

In conclusion, we affirm the finding of the circuit court of Montgomery County.

Affirmed.

HOWERTON and RARICK, JJ., concur.