GARY SOUTH, Petitioner-Appellee, *v.* GAYLE M. FRANZEN, Director, Illinois Department of Corrections, *et al.*, Respondents-Appellants.

Fourth District    No. 16234

Opinion filed November 26, 1980.

596

William J. Scott, Attorney General, of Chicago (Melbourne A. Noel, Jr., Assistant Attorney General, and Terence M. Madsen, law student, of counsel), for appellants.

James K. Genden, of Mayer, Brown & Platt, of Chicago, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

We are *forced* to become embroiled in disciplinary matters of correctional facilities. And we are most loath to do so!

For such matters are best left up to penal authorities.

In any event—we affirm.

South, while serving a sentence for burglary at the Decatur Community Correctional Center, was found to be in possession of 3.1 grams of marijuana. Because of this infraction of rules of the Illinois Department of Corrections, the Institutional Adjustment Committee recommended that 12 months of South's good time credit be revoked. The Administrative Review Board and respondent Franzen approved that recommendation, and South's earliest possible release date became November 8, 1980, rather than November 8, 1979.

South's good time credit was revoked pursuant to section 804(II)(A)(28) of the Administrative Regulations of the Department of Corrections, Adult Division. That section provides that a maximum of 12 months'

good time credit may be revoked for: "Violating the general laws of the State or Federal government." Initially, South was also charged with violation of section 804(II)(A)(9) of the Regulations, which allows a revocation of a maximum of three months' good time credit for: "Using intoxicants, being under the influence of any kind of drug or medication not prescribed by institutional personnel, or having possession of narcotics, barbiturates and/or amphetamines."

On February 26, 1980, South filed a *habeas corpus* petition. At the hearing on that petition, he argued that section 804(II)(A)(9)—specific—and not section 804(II)(A)(28)—general—was the applicable provision. The trial court ruled, however, that the particular language of section 804(II)(A)(9) does not encompass possession of marijuana. But the court then ruled that to revoke 12 months' good time credit for South's conduct would be grossly disproportionate to his offense. Thus, South's petition for *habeas corpus* was granted, and the court ordered his release. South had at that time been imprisoned more than five months past the date when he would have been released had none of his good time credit been revoked.

# I

■■■ Courts are *most* reluctant to be interjected into the disciplinary problems of correctional agencies—and rightly so. When confronted with cases involving prison discipline and the enforcement of rules designed to ensure the security of penal institutions, courts of review traditionally give great deference to the judgment of prison authorities. (*Jones v. North Carolina Prisoners' Labor Union, Inc.* (1977), 433 U.S. 119, 53 L. Ed. 2d 629, 97 S. Ct. 2532; *In re Owen* (1973), 54 Ill. 2d 104, 295 N.E.2d 455.) Those officials have firsthand experience in determining what is and is not vital to the security and order of the institution. It is not, therefore, the province of a court to second-guess their actions or to substitute a less informed judgment for that of officials who are seeking to further the institution's vital interest in order and discipline. *Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861; *Pell v. Procunier* (1974), 417 U.S. 817, 41 L. Ed. 2d 495, 94 S. Ct. 2800.

■■ The role of the judiciary, rather, is to determine only whether prisoners' constitutional rights have been violated. (*Owen.*) But even in discharging that duty, we must be mindful that what constitutes a constitutional deprivation as to ordinary citizens may not raise issues of constitutional dimensions in the context of a prison. Thus, in *Jones v. North Carolina Prisoners' Labor Union, Inc.*, the court upheld prison rules proscribing prisoner union meetings and inmate-to-inmate solicitation. In *Bell v. Wolfish*, the court upheld certain prison searches that would

unquestionably have been invalid if carried out against citizens outside a prison.

We agree with the trial judge that the letter of section 804(II)(A)(9) does not cover the offense of possession of marijuana. It could have been invoked had South been discovered to be *under the influence* of marijuana but it covers possession only of "narcotics, barbiturates and/or amphetamines." Our supreme court has held that marijuana may not be statutorily classified along with narcotics for purposes of determining punishment for possession or use of the substance. (*People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) Moreover, the General Assembly, in passing the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, pars. 701-719) removed marijuana from the narcotic classification. Given these judicial and legislative statements, we cannot now say that marijuana is a "narcotic" for purposes of section 804(II)(A)(9). It also could not be considered a barbiturate or an amphetamine.

■■ What we have here is faulty draftsmanship, not a conscious effort on the part of the Department of Corrections to treat possession of marijuana as a more serious offense than possession or use of other substances. However, we are obliged to take the regulation as we find it, and cannot ourselves add the word "marijuana" to section 804(II)(A)(9) in order to make that provision applicable here.

The issue before us today, then, is whether South can be subjected to revocation of 12 months' good time credit under general section 804(II)(A)(28) for possession of marijuana when the more exact section 804(II)(A)(9) would allow a revocation of only three months' good time credit for possession of a narcotic or for being under the influence of marijuana or of a narcotic.

Were we presented with an issue involving the validity of a rule imposing the *same* punishment for possession of a narcotic and possession of marijuana, we would be inclined to uphold it on the principle of deferring to prison authorities' judgments in disciplinary matters. In a prison—as opposed to society at large—the possession of marijuana could be just as threatening to order and security as possession of a narcotic. But here a 12-month revocation has been imposed for an offense that is, in society, regarded as less serious than an offense for which there can be only a three-month revocation.

■■ The State has advanced no plausible explanation of why possession of marijuana should be treated four times more severely than use of marijuana or use or possession of a narcotic. The deference that we usually give to prison authorities' judgments does not preclude us from deciding, under *McCabe*, that the punishment scheme that results from application of sections 804(II)(A)(9) and 804(II)(A)(28) violates South's constitutional right to equal protection.

■■ The respondents have contended that Department of Corrections officials have the discretion to apply either section 804(II)(A)(9) or section 804(II)(A)(28) to any drug offense. Under that interpretation, the maximum good time revocation for use or possession of a narcotic would be the same as that for possession of marijuana—12 months. As suggested above, were we to accept that reading of the regulation, South's constitutional claim would lose its force. We cannot, however, believe that the drafters of Regulation 804(II)(A) intended such a result. That provision contains 27 enumerated sections which proscribe various acts, many of which would constitute violations of law. Regulation 804(II)(A) originally contained only those 27 sections. Section 804(II)(A)(28), which was added later, consists of very general language ("Violating the general laws of the State or Federal government"), indicating that it was added as a catchall provision to cover conduct not provided for in the original 27 sections. It was surely not added to give prison authorities discretion to proceed under it rather than under one of the 27 original sections specifically covering a prisoner's conduct. When a specific provision is applicable, a more general provision contained in that same regulatory scheme should not be applied. (*Havlik v. Marcin* (1971), 132 Ill. App. 2d 532, 270 N.E.2d 189.) Thus, general section 804(II)(A)(28) should apply only to drug offenses not encompassed by specific section 804(II)(A)(9). The analysis offered by the respondents would make nullities of most of the 27 specific sections.

In reaching the result announced in this case, we do not suggest that section 804(II)(A)(28) was inapplicable to South's conduct or that the provision is invalid on its face. Rather, the manner in which it was applied here was improper. We note that 12 months is the *maximum* good time revocation available under that provision. Thus, the authorities could have revoked three months' credits, or one month's or none at all. We merely hold that they did not have the discretion to impose more than a three months' revocation.

■■ The trial court's order granting the *habeas corpus* petition is therefore affirmed.

## II

In a motion taken with this case, the respondents moved for leave to cite additional authority. On April 11, 1980, this court entered a docketing order setting forth the dates for filing of the record, briefs, and reply brief. (See Supreme Court Rule 343(a), 73 Ill. 2d R. 343(a).) According to that order, respondents were to file their reply brief on or before August 8, 1980. This deadline was later extended to August 25, which date passed without the filing of a reply brief. Then on September 17—less than a week before the date of oral arguments—respondents moved to file their

reply brief *instanter*. Because such motion would have offended the firm briefing schedule already established, that motion was denied. Respondents then moved for leave to cite additional authority.

A motion such as this places the court in a most unfortunate dilemma. We are always grateful for any assistance that counsel can give us in finding and applying the relevant authorities and precedent. On the other hand, the parties know, at the earliest stage, when their briefs must be filed. If we routinely allow late filing, we are essentially telling the parties that our docketing order is meaningless and that they may disregard it with impunity.

Our court, as is true with every other court of review in the country, has experienced a veritable avalanche in its caseload in recent years. Between 1964 and 1979 the number of cases filed in this court escalated from 90 to 737. In 1980 that figure seems destined to reach 900. In spite of these tremendous increases, we have succeeded in eliminating the sizable backlog that had developed prior to 1977, and we are experiencing considerable success in staying current with the cases being filed. Our success in this regard is attributable in great measure to our practice of fixing firm dates for the filing of briefs and then allowing late filings only in the most extreme and compelling circumstances. And this is no surprise to attorneys since a statement of this policy is communicated to counsel along with the order setting deadlines for filing. Only in that way can we fulfill our duty, to the public and to the parties in the cases coming before us, to handle cases as expeditiously as possible.

■■ We see the respondents' motion as an effort to circumvent our order denying their motion to file a late reply brief. They have not pointed out any extreme or compelling circumstances that would cause us to reconsider our order denying the original motion, and we therefore see this motion as improper. That motion is again denied.

The granting of *habeas corpus* is affirmed.

Affirmed.

GREEN and CRAVEN, JJ., concur.