In the
United States Court of Appeals
For the Seventh Circuit

Nos. 96-4010, 98-1328

Jimmy Walker,

Petitioner-Appellant,

v.

J.T. O'Brien,

Respondent-Appellee.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 96-C-661-C--Barbara B. Crabb, Judge.

And

Nos. 97-3792, 97-3797, 97-3798, 97-3799,
97-3800

Joseph W. Finfrock,

Petitioner-Appellant,

v.

Craig A. Hanks,

Respondent-Appellee.

Appeals from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
Nos. IP97-0861-C-H/G--David F. Hamilton, Judge,
IP97-0996-C-M/S--Larry J. McKinney, Judge,
IP97-0997-C-T/G--John Daniel Tinder, Judge,
IP97-0998-C-T/G--John Daniel Tinder, Judge,
IP 97-0999-C-H/G--David F. Hamilton, Judge.

Argued January 19, 1999--Decided June 22, 2000

  Before Flaum, Ripple, and Diane P. Wood,
Circuit Judges.

  Diane P. Wood, Circuit Judge.  The passage
of the Antiterrorism and Effective Death
Penalty Act (AEDPA), Pub. L. No. 104-132,
110 Stat. 1214 (1996), and the Prison
Litigation Reform Act (PLRA), Pub. L. No.
104-134, sec. 801 et seq., 110 Stat.

1321-66 (1996), which became effective on April 24, 1996 and April 26, 1996, respectively, ushered in a new and far more restrictive era for prisoner litigation. A critical feature of both statutes was the creation of gatekeeping mechanisms designed to keep frivolous suits out of the federal courts. Both this court and our sister circuits have had occasion during the nearly four years that have passed since the laws took effect to flesh out the rules governing those gatekeeping functions. The cases before us today, which we consolidated for purposes of oral argument and this opinion, raise once again the question of how the statutory gatekeeping mechanisms work together: in particular, whether the fee payment and other rules of the PLRA apply to requests for federal collateral relief, whether under 28 U.S.C. sec.sec. 2241, 2254, or 2255. We say "again," because the court has already spoken to this question in two decisions, Newlin v. Helman, 123 F.3d 429 (7th Cir. 1997), and Thurman v. Gramley, 97 F.3d 185 (7th Cir. 1997), which held that civil filing fees must be paid pursuant to the PLRA in collateral relief proceedings that are not a functional continuation of the criminal prosecution. See Newlin, 123 F.3d at 438.

   Experience has shown that our views are not shared by any other court, and so we asked the parties in these two cases to brief the question whether we should reconsider this particular aspect of Newlin and Thurman./1 With the benefit of the views from the other circuits, we have concluded that the line Newlin draws between collateral attacks that are in some way related to the original criminal proceeding and those that are not should be abandoned. Indeed, we find such a dichotomy inconsistent in principle with the Supreme Court's decisions in Edwards v. Balisok, 520 U.S. 641 (1997), and Preiser v. Rodriguez, 411 U.S. 475 (1973). We therefore hold today, in keeping with the decisions in Davis v. Fechtel, 150 F.3d 486, 488-90 (5th Cir. 1998); McIntosh v. United States Parole Commission, 115 F.3d 809, 811-12 (10th Cir. 1997); and Blair-Bey v. Quick, 151 F.3d 1036, 1039-41 (D.C. Cir. 1998), that the PLRA does not apply to any requests for collateral relief under 28 U.S.C. sec.sec. 2241, 2254, or 2255. See also Martin v. Bissonette, 118 F.3d 871, 874

(1st Cir. 1997) (holding broadly that PLRA does not apply to habeas corpus petitions filed by state prisoners); Reyes v. Keane, 90 F.3d 676, 678 (2d Cir. 1996) (same with respect to habeas corpus actions); Santana v. United States, 98 F.3d 752, 756 (3d Cir. 1996) (same with respect to actions under 28 U.S.C. sec.sec. 2254 and 2255); Smith v. Angelone, 111 F.3d 1126, 1131 (4th Cir. 1997) (same with respect to habeas corpus actions); Kincade v. Sparkman, 117 F.3d 949, 950-51 (6th Cir. 1997) (same with respect to actions under 28 U.S.C. sec.sec. 2254 and 2255); Naddi v. Hill, 106 F.3d 275, 277 (9th Cir. 1997) (same with respect to habeas corpus actions); Anderson v. Singletary, 111 F.3d 801, 806 (11th Cir. 1997) (same with respect to actions under 28 U.S.C. sec.sec. 2254 and 2255). Because Part III of this opinion overrules in part an earlier decision of a panel of this court, and because Parts II and IV address important issues about the administration of the habeas corpus regime, the opinion has been circulated to the full court under Circuit Rule 40(e). A majority of the judges in active service did not wish to rehear the case en banc. Chief Judge Posner and Judges Easterbrook and Manion disagreed with that decision, for the reasons expressed in the dissenting opinion of Judge Easterbrook that follows the panel's opinion.

I

The cases that have prompted us to return to the question whether the PLRA applies to collateral relief proceedings both arise from prison disciplinary proceedings. We briefly review the background facts of each one before turning to the central question before us.

A. Walker v. O'Brien

Jimmy Walker was involved in a disturbance while he was incarcerated at the Federal Correctional Institution in Greenville, Illinois, which resulted in his allegedly damaging the door to his cell. A security officer at Greenville issued an incident report charging him with "destroying, altering, or damaging government property." Walker pleaded not guilty to the charge and requested staff

representation. He also asked the officials to call his cellmate, inmate Holloway, as a witness at the hearing. Notwithstanding his request, he was not represented at the hearing, and the hearing officer found him guilty based on the incident report, a written statement from Holloway, and a written statement from another correctional officer. He was sentenced to spend 30 days in disciplinary segregation, to forfeit 14 days' good time credit, and to pay $1245 as restitution (representing the cost of repairing the door)./2

Because his penalty involved the duration of his confinement, Walker initially pursued the administrative remedies that were available to him in the prison system and then filed the present petition for a writ of habeas corpus under 28 U.S.C. sec. 2241. A collateral attack was the only route available to him, as this court had held in Miller v. Indiana Department of Corrections, 75 F.3d 330 (7th Cir. 1996), and the Supreme Court later confirmed in Edwards v. Balisok, supra. Walker was required to use sec. 2241 in particular because 28 U.S.C. sec. 2255, the habeas corpus substitute for federal prisoners, is properly used only for challenges to convictions and sentences, while sec. 2241 is used for other challenges to the fact or duration of confinement. See generally Valona v. United States, 138 F.3d 693, 694 (7th Cir. 1998); Carnine v. United States, 974 F.2d 924, 927 (7th Cir. 1992).

At that point, matters became a bit complicated. First, invoking the screening mechanism that applies to complaints in "civil actions" filed by prisoners, the district court sua sponte dismissed Walker's action prior to service on the ground that it was frivolous because there was some evidence to support the imposition of disciplinary measures. See Superintendent v. Hill, 472 U.S. 445 (1985); 28 U.S.C. sec. 1915A(b)(1). The court declined, however, to impose a filing fee. Walker appealed the dismissal of his case (No. 96-4010) and asked for permission to proceed in forma pauperis (IFP). The court denied his request, finding that the appeal was frivolous under 28 U.S.C. sec. 1915(e)(2)(B) (notwithstanding the fact that the frivolousness of an appeal under this provision is a question for the

court of appeals) and that the appeal was not in good faith for purposes of 28 U.S.C. sec. 1915(a)(3). The latter determination prevented Walker from proceeding IFP on appeal, at least without a ruling from this court, Celske v. Edwards, 164 F.3d 396, 397 (7th Cir. 1999); Newlin, 123 F.3d at 432, and therefore obligated Walker to pay the full $105 filing fee. He has done so.

After the appeal was underway, Walker filed a motion for reconsideration of the underlying ruling in the district court under Rule 60. The court denied the motion because the appeal was pending; Walker moved for reconsideration, and the court again ruled against him. Walker then filed a notice of appeal, although it is somewhat unclear which order he intended to challenge (No. 98-1328). The district court ruled that an appeal from the Rule 60 orders would not be in good faith, which again disqualified Walker for IFP treatment and made a second $105 payment due. Walker, who has filed a motion with this court to proceed IFP, has not paid the second fee, and this court has deferred any assessment pending the outcome of this appeal.

B.   Finfrock v. Hanks

Joseph Finfrock, an inmate of the Wabash Valley Correctional Facility in Indiana, filed a habeas corpus petition under 28 U.S.C. sec. 2254 in which he attacked five separate prison disciplinary decisions. Prison officials had charged Finfrock with various types of misconduct in violation of prison rules, such as improper possession and damaging of a law book, threatening to beat a correctional officer, slamming a fellow prisoner against a door, spitting on a fellow inmate, and attempting to escape during transport from one prison to another. What the proceedings have in common is that Finfrock was adjudged guilty in each one. In three cases he lost good-time credit: 60 days in No. 97-3792, 167 days in No. 97-3797, and 60 days in No. 97-3798. In two cases his classification for purposes of earning good-time credit was reduced (Nos. 97-3798 and 97-3799). In four cases, Finfrock was sentenced to varying time periods in disciplinary segregation (Nos. 97-3797, 97-3798, 97-3799, and 97-3800)./3

By order of the U.S. District Court for the Southern District of Indiana, Finfrock was granted permission to proceed IFP, but he was instructed to re-file the action as five separate cases, one per violation. Each case was ultimately dismissed, and Finfrock filed timely notices of appeal. In each case, the presiding district judge denied a certificate of appealability (CA), which is required for appeals in certain collateral relief cases. See 28 U.S.C. sec. 2253(c). The presiding district judge in each case also denied Finfrock IFP treatment on appeal, both because Finfrock has accumulated three "strikes" under 28 U.S.C. sec. 1915(g) and because his appeal was taken in bad faith. Finfrock wants to argue to this court that the dismissals were incorrect, because he was denied certain hearing rights, the evidence was insufficient on some charges, he was denied a competent lay advocate, and so on. Before we can reach these claims, however, we must address two questions: (1) whether the PLRA filing fee provisions apply to Finfrock's cases, and (2) whether Finfrock must obtain a CA to pursue his appeals.

II

Two preliminary questions require some attention before we turn to the PLRA issues. First, in each of Walker's and Finfrock's cases the respective district courts concluded that the appeal was not taken in good faith. See 28 U.S.C. sec. 1915(a)(3). We must decide whether, in light of those determinations, Walker or Finfrock is still entitled to attack the decisions of the district courts that the PLRA applies to a prisoner pursuing collateral relief. Second, there is a question whether state prisoners (such as Finfrock), like their federal counterparts (such as Walker), should be filing habeas corpus petitions that do not challenge their convictions or sentences under sec. 2241, rather than sec. 2254. The answer has implications for the need to acquire a certificate of appealability, as well as for the process of characterizing sec. 2241 actions for PLRA purposes.

A.  Bad Faith

It is easiest to begin with the worst case scenario and work backwards. If neither appeal were taken in good faith, then this fact would independently preclude Walker and Finfrock from proceeding IFP regardless of whether the PLRA applied and they would be obligated to pay the full filing fee immediately. See 28 U.S.C. sec. 1915(a)(3); Celske v. Edwards, supra, 164 F.3d at 397. A prisoner litigant is entitled to contest the district court's finding of a lack of good faith by filing a motion in the court of appeals under Fed. R. App. P. 24(a)(5) to proceed IFP on appeal, before paying any part of the docket and filing fees. Celske, 164 F.3d at 398. When faced with such a motion, the statute requires us to determine whether the appeal is frivolous or otherwise in bad faith. See Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000).

By deciding to pay the filing fee in No. 96-4010 and proceed with the appeal, Walker has forfeited his right to challenge the district court's good faith determination in that case. Walker preserved his right to assert such achallenge in No. 98-1328, but the district court's determination is unimpeachable as Walker's appeal from the district court's denial of his utterly meritless post-judgment motions is indisputably frivolous. Accordingly, Walker is independently barred from proceeding IFP in the present appeals.

Finfrock, on the other hand, has good grounds on which to challenge the good faith determinations in his cases. In each one, the respective district courts found that an appeal would not be in good faith because no certificate of appealability had been issued. This reason is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding. Moore v. Pemberton, 110 F.3d 22, 24 (7th Cir. 1997). See also Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (noting that the standard for obtaining a certificate of probable cause, the predecessor to the certificate of appealability, is higher than the one used to evaluate good faith under 28

U.S.C. sec. 1915); Pate v. Stevens, 163 F.3d 437, 439 (7th Cir. 1998) (citing Barefoot and warning district courts not to apply an inappropriately high standard in making good faith determinations). To issue a certificate of appealability, a court must find that the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. sec. 2253(c)(2); Williams v. Parke, 133 F.3d 971, 975 (7th Cir. 1997). In contrast, to determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit. Lee, 209 F.3d at 1026. By conflating the standard for issuing a certificate of appealability and the standard for determining whether an appeal is in good faith, the district courts in Finfrock's cases erred in determining that his appeals were not in good faith. Thus, the question whether his cases belong under the PLRA is properly before us.

But what about Walker? That Walker is not eligible for IFP status regardless of whether the PLRA applies raises the question whether he may challenge the applicability of the PLRA to his habeas corpus action. If the only thing the PLRA did was establish a system for the payment of docketing fees, then we would be compelled to find that he could not bring such a challenge.

The PLRA, however, does more than this. It also establishes a bar for future entitlement to IFP treatment in the so-called "three strikes" rule of 28 U.S.C. sec. 1915(g). The bar applies to prisoners who, while incarcerated, have, on at least three prior occasions, "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted." If the present actions Walker has filed belong under the PLRA, then he risks accumulating not one but two "strikes" for purposes of sec. 1915(g), because we have held that the filing of a complaint and the pursuit of an appeal count as separate "strikes" for this purpose. Newlin, 123 F.3d at 433. Even though Walker did not spell out this particular consequence of the PLRA until his reply brief, we are satisfied that his argument in the opening brief that the PLRA in its

entirety does not apply to habeas corpus actions was sufficient to present the point to this court. Furthermore, we conclude that the detriment he would suffer if he accumulated one or two "strikes" is enough to entitle him to continue with the present action. (Although no one has raised the point, we note also that the district court never assessed the $5 district court filing fee for the sec. 2241 action under the PLRA's mandatory payment requirement, see sec. 1915(b)(1). The court did not assess the fee because the case was dismissed prior to service. If, however, the PLRA applied to the case, then this ruling was incorrect. See Hains v. Washington, 131 F.3d 1248, 1250 (7th Cir. 1997) (filing fees must be paid even when a case is dismissed under sec. 1915A). This means there is another concrete consequence for Walker from the outcome of this appeal: if the PLRA applies, then Walker owes $5 to the district court; if it does not and he was otherwise entitled at the district court stage to IFP status, he does not.)

B. Section 2241 or Section 2254?

The second preliminary question we must address is whether the system governing writs of habeas corpus pertaining to prison disciplinary decisions must be the same for state and federal prisoners, or if differences in the applicable laws lead to somewhat different procedures. Congress enacted 28 U.S.C. sec. 2255 to be the vehicle for collateral attacks on convictions and sentences for federal prisoners. See, e.g., United States v. Hayman, 342 U.S. 205 (1952) (discussing sec. 2255); Valona v. United States, supra, 138 F.3d at 694 (distinguishing sec. 2255 and sec. 2241 actions). The specific focus of the statutory language on the original judgment and sentence had led courts to find that challenges brought by federal prisoners that implicate the fact or duration of confinement but do not stem from the original conviction or sentence can be brought only under 28 U.S.C. sec. 2241, the general habeas corpus statute. See, e.g., Valona, 138 F.3d at 694. In contrast to sec. 2255, the language of sec. 2254, the statute entitling state prisoners to seek federal habeas corpus relief, is considerably broader. Section 2254 refers generally to an application

"in behalf of a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. sec. 2254(a). The focus is on the fact of custody, not necessarily on flaws in the underlying judgment or sentence that brought the person there (though allegations of those kinds of problems can and do support a petition under sec. 2254).

In our view, the difference in language between sec. 2255 and sec. 2254, coupled with the Supreme Court's guidance in Felker v. Turpin, 518 U.S. 651 (1996), leads to a different path for federal and state prisoners. A state prisoner, like Finfrock, has available a statute that in effect implements the general grant of habeas corpus authority found in sec. 2241, as long as the person is in custody pursuant to the judgment of a state court, and not in state custody for some other reason, such as pre-conviction custody, custody awaiting extradition, or other forms of custody that are possible without a conviction. In the latter cases, the Great Writ protected by the Constitution, Article I, Section 9, Clause 2, and sec. 2241 (to the extent these may be different) remain available. Even though sec. 2254 does not contain exclusivity language along the lines of sec. 2244(a) and sec. 2255 para. 5 (which together make it clear that a federal prisoner who wishes to challenge the legality of his or her conviction or sentence can proceed only under sec. 2255), as a practical matter the requirements of sec. 2254 must be met by all state prisoners filing petitions for writs of habeas corpus after conviction. As the Supreme Court put it in Felker, a court's "authority to grant habeas relief to state prisoners is limited by sec. 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" 518 U.S. at 662. The Felker decision observed that certain requirements of sec. 2254 and related laws, such as the need to obtain the approval of the court of appeals before filing a successive application in the district court, see 28 U.S.C. sec. 2244(b)(3)(A), did not apply to collateral attacks begun in the Supreme Court. But those kinds of qualifications

to one side, Felker leads to the conclusion that when a prisoner begins in the district court, sec. 2254 and all associated statutory requirements apply no matter what statutory label the prisoner has given the case. (Roughly speaking, this makes sec. 2254 the exclusive vehicle for prisoners in custody pursuant to a state court judgment who wish to challenge anything affecting that custody, because it makes clear that bringing an action under sec. 2241 will not permit the prisoner to evade the requirements of sec. 2254.) Indeed, we have held in numerous cases that sec. 2254 was the correct vehicle for contesting loss of good time credit in prison disciplinary proceedings, and we adhere to those decisions today. E.g., McPherson v. McBride, 188 F.3d 784 (7th Cir. 1999); Meeks v. McBride, 81 F.3d 717 (7th Cir. 1996). That is what Finfrock did in his case, and we agree that this was the correct route to follow.

III

We come then to the central question before us: whether the requirements of the PLRA apply to a habeas corpus action filed by a federal prisoner under sec. 2241 or by a state prisoner under sec. 2254 that is not related to the underlying criminal judgment or sentence--that is not, as Newlin put it, a functional continuation of the criminal prosecution. For the reasons that follow, we conclude that cases properly brought under sec.sec. 2241 or 2254 as habeas corpus petitions are not subject to the PLRA. In so doing, we bring this circuit into line with all of our sister circuits who have ruled on the matter. See, in particular, Davis v. Fechtel, supra, 150 F.3d at 488-90; McIntosh v. United States Parole Commission, supra, 115 F.3d at 811-12; and Blair-Bey v. Quick, supra, 151 F.3d at 1039-41. We take this action not simply for the sake of ending our status as an outlier; conformity for its own sake is neither necessary nor desirable for the courts of appeals, because differences in opinion have the effect of ventilating important legal questions and creating a background against which the Supreme Court can ultimately resolve an issue for the country as a whole. Still, we respect the views of our sister circuits, and we always proceed carefully when we find

ourselves about to create a conflict in the circuits. That is the purpose of Seventh Circuit Local Rule 40(e), under which the court does not create a new conflict without consulting all active judges. The same approach is in order when a persistent conflict among the circuits exists, and we find ourselves in a minority of one. In the present case, experience across the country since Newlin was decided has convinced us that the distinction proposed in Newlin, between habeas corpus petitions that relate to the original criminal prosecution and those that do not, for purposes of the PLRA, is not consistent with the Supreme Court's decisions in this area, is in tension with the distinct statutory systems Congress has created for habeas corpus actions and other civil actions, and is confusing for the district courts to administer. We therefore hold that if a case is properly filed as an action under 28 U.S.C. sec.sec. 2241, 2254, or 2255, it is not a "civil action" to which the PLRA applies./4

In coming to this conclusion, we begin with the Supreme Court's 1973 decision in Preiser v. Rodriguez, supra, which remains the leading case establishing the proposition that prisoners may not bring civil rights actions in federal court to challenge the fact or duration of their confinement. The underlying facts of the case are especially instructive for our situation. It involved claims brought by three different state prisoners, each of whom was deprived of good-conduct-time credits by the New York State Department of Correctional Services. Respondent Rodriguez was serving a sentence for perjury and attempted larceny. While in prison, he was charged in two separate disciplinary action reports with possession of contraband material in his cell; after a hearing, he was punished with the cancellation of 120 days' good-conduct-time credits. 411 U.S. at 477-78. Respondent Katzoff was imprisoned after being convicted of possession of a dangerous weapon. He was disciplined for making derogatory comments about prison officials in his diary, and was punished with the deprivation of 30 days' good-conduct time (in addition to being required to serve 57 days in segregation, which indirectly led to the loss of another 20 days' good-conduct time). Id.

at 480. As the Supreme Court noted, respondent Kritsky's case was similar. He was serving a state court sentence for armed robbery, and while in prison, he was charged with being a leader in a prison-wide protest demonstration and with advocating insurrection during that demonstration. For this, the warden punished him with the loss of 545 days' good-conduct-time credits and confined him in segregation for four-and-a-half months, which led to the loss of another 45 days' good-conduct time. Id. at 481.

Against this factual backdrop, the en banc Second Circuit held that the prisoner complaints could be heard either as habeas corpus petitions or under the Civil Rights Act. Id. at 482. The Supreme Court granted certiorari in order, as it said,

to consider the bearing of the Wilwording [v. Swenson, 404 U.S. 249 (1971)] decision upon the situation before us-- where state prisoners have challenged the actual duration of their confinement on the ground that they have been unconstitutionally deprived of good- conduct-time credits, and where restoration of those credits would result in their immediate release from prison or in shortening the length of their confinement.

Id. The Court conducted a thorough examination of the writ of habeas corpus, and more particularly of sec.sec. 2241 and 2254. In so doing, it noted that "the use of habeas corpus to secure release from unlawful physical confinement, whether judicially imposed or not, was thus [by the time of the independence of the American colonies] an integral part of our common-law heritage." Id. at 485 (emphasis added). In its discussion, the Court equated challenges on the ground that the statute under which the prisoner was convicted was unconstitutional, that trial was held on a defective indictment, that the person was confined in the wrong institution, that he was denied constitutional rights at trial, that his guilty plea was invalid, that he is being unlawfully detained by the Executive or the military, and that parole was unlawfully revoked. Id. at 486. It concluded by holding that "the respondents' suits in the District Court fell squarely within this traditional

scope of habeas corpus." Id. at 487. Lest there be any question, the Court underscored the fact that habeas corpus was the sole vehicle available to the prisoners, whether restoration of the good-conduct-time credits would result in immediate release or would only shorten the length of their confinement. Id.

Preiser, therefore, drew no distinction between habeas corpus petitions that were based on flaws in the original criminal prosecution and those that were based on claims relating to prison discipline. To the contrary, the Court went out of its way to stress that all claims relating to the fact or duration of confinement fell within the proper scope of the habeas corpus statutes. The Court's more recent decision in Edwards v. Balisok, supra, reinforces this point.

In Balisok, the Court considered the question whether the rule of Heck v. Humphrey, 512 U.S. 477 (1994), under which a state prisoner's claim for damages is not cognizable under 42 U.S.C. sec. 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his criminal conviction or sentence, should be extended to claims for damages brought by prisoners who were challenging the validity of the procedures used to deprive them of good-time credits. 520 U.S. at 643. Balisok sued under sec. 1983 after he was found guilty of four infractions of prison rules and sentenced to 10 days in isolation, 20 days in segregation, and the loss of 30 days' good-time credits. Id. at 643-44. Taking Preiser into account, Balisok was careful not to request restoration of his good-time credits; he asked instead only for a declaration that the procedures used by the state officials violated due process, for damages, and for an injunction preventing future violations. Notwithstanding those limitations, the Supreme Court held that the Heck rule applied to his case. It observed that the principal procedural defect about which Balisok was complaining-- that he was denied the opportunity to present witnesses who possessed exculpatory evidence--would, if proven, necessarily imply the invalidity of the deprivation of good-time credits. Id. at 646-47. There is not a hint in the Court's opinion that Balisok's habeas corpus

action would call for different treatment from the comparable actions brought under Heck; quite to the contrary, the entire thrust of the opinion is that there is no legally important difference between the two uses of habeas corpus.

The Newlin opinion did not consider the effect of Preiser on the rule it adopted. Instead, it cited only the Court's decision in United States v. Addonizio, 442 U.S. 178 (1979), for the proposition that "[c]omplaints about denial of parole, revocation of parole, and the like, do not affect the validity of the criminal sentence, and this litigation therefore cannot be called a functional continuation of the criminal prosecution." 123 F.3d at 438. Addonizio, however, held only that allegations by three federal prisoners that a postsentencing change in the policies of the United States Parole Commission, which had prolonged their actual imprisonment beyond the period intended by the sentencing judge, would not support a collateral attack on the original sentence under 28 U.S.C. sec. 2255. It explained its ruling as follows:

The claimed error here--that the judge was incorrect in his assumptions about the future course of parole proceedings-- does not meet any of the established standards of collateral attack. There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the "fundamental" character that renders the entire proceeding irregular and invalid.

442 U.S. at 186. Bearing in mind that sec. 2255 is available to federal prisoners only for attacks on the underlying conviction and sentence, see United States v. Hayman, supra, and that the Addonizio Court said nothing about the prospects for an action under sec. 2241, at the most Addonizio reaffirms certain limits on the use of sec. 2255. Finally, to the extent the Newlin decision legitimately inferred from Addonizio a recognition by the Supreme Court that attacks on the original conviction and sentence are different from those on parole proceedings, we think that the Supreme Court's later decision in Balisok made it clear that

Addonizio did not go that far, and that the Preiser rule establishing uniform habeas corpus rules for all challenges to the fact or duration of confinement remained the law.

We see no need to lengthen this opinion by reviewing in detail the reasons that our nine sister circuits have given for coming to the conclusion that the PLRA does not apply to petitions for a writ of habeas corpus and other collateral relief. Briefly, however, the analysis is as follows. Even though habeas corpus petitions are technically "civil actions," if one is compelled to divide the universe of cases into only the two categories of civil and criminal, both we and our sister circuits have recognized the reality that habeas corpus petitions are a group unto themselves. See, e.g., Martin v. United States, 96 F.3d 853, 855 (7th Cir. 1996) ("habeas corpus is more accurately regarded as being sui generis"); Blair-Bey, 151 F.3d at 1040; Smith v. Angelone, supra, 111 F.3d at 1129-30. The precise question of statutory construction is therefore whether habeas corpus petitions were considered by Congress to be the kind of "civil action" to which the provisions of the PLRA should apply. Even under the rule of Newlin, the answer was not a clear-cut "yes." Instead, according to Newlin, habeas corpus petitions that related to the original criminal proceed ing were not "civil actions," and petitions that were independent of that proceeding were. But the petition itself, under Preiser and Balisok, is the same animal, regardless of the grounds the detained person is advancing in it. In addition, other courts have reviewed carefully the legislative history of both the PLRA and AEDPA and have concluded that it supports a clear line between civil actions attacking conditions of confinement (subject to the PLRA) and habeas corpus petitions attacking the fact or duration of confinement (subject to the rules governing habeas corpus). See, e.g., Blair-Bey, 151 F.3d at 1040-41; Reyes v. Keane, supra, 90 F.3d at 678; Smith, 111 F.3d at 1130-31; Martin v. Bissonette, supra, 118 F.3d at 874. Finally, as the District of Columbia Circuit commented in Blair-Bey, "Treating one subset of habeas petitions as 'civil actions' for PLRA purposes would also have the effect of subjecting those

petitions to two separate regimes designed to deter repeat plaintiffs--with anomalous results, given the nature of the two regimes." 151 F.3d at 1041. For instance, that court pointed out, AEDPA handles the problem of repeat filers through the requirement that inmates seeking to file second or successive petitions for a writ of habeas corpus must obtain the permission of the court of appeals, in 28 U.S.C. sec. 2244. The PLRA, in contrast, handles the problem of repetitive filers through the "three strikes" rule discussed earlier in this opinion. See 28 U.S.C. sec. 1915(g). To summarize, the unique status of habeas corpus petitions, the legislative history of the PLRA and AEDPA, and the administrative problems of attempting to apply both regimes to the same set of cases all point in the direction of the conclusion we reach here.

IV

We must also decide whether the requirement of a certificate of appealability applies to habeas corpus actions based on prison disciplinary proceedings filed by state prisoners (like Finfrock) under 28 U.S.C. sec. 2254. The district judges considering Finfrock's cases assumed that it did, and they each denied CAs in the cases before them. That assumption, however, requires examination.

The literal language of 28 U.S.C. sec. 2253(c)(1)(A) would lead to the conclusion that the requirement does not apply, because the statute expressly imposes the CA requirement on appeals where the challenged detention "arises out of process issued by a State court." When a prisoner loses good-time credits after a prison disciplinary proceeding, the resulting detention does not arise out of process issued by a state court. In Sylvester v. Hanks, 140 F.3d 713 (7th Cir. 1998), this court flagged the question whether the CA requirement applied in these circumstances, but did not resolve it. Id. at 714. In other decisions, courts have assumed without further analysis that the CA requirement does apply. See, e.g., Post v. Gilmore, 111 F.3d 556 (7th Cir. 1997) (per curiam); Hogan v. Zavaras, 93 F.3d 711 (10th Cir. 1996).

In light of the statutory language, we do not see how we can construe the words "process issued by a State court" to mean "process not issued by a State court, but instead the outcome of an internal prison disciplinary proceeding." It is indisputable that prison disciplinary proceedings are far more informal than court proceedings; rules of evidence do not apply in the former; evidentiary standards are looser; and in general (undoubtedly for good reasons) they operate more flexibly. We note as well that states differ in the extent to which the results of prison disciplinary proceedings may be reviewable in the state courts. In some states, a prisoner challenging a disciplinary sanction may seek recourse in state court after he or she has exhausted available administrative remedies. For two methods, see Peckham v. Krenke, 601 N.W.2d 287 (Wis. Ct. App. 1999) (certiorari review available), and South v. Franzen, 413 N.E.2d 523 (Ill. App. Ct. 1980) (habeas corpus review available). In others, like Indiana, the administrative proceeding is the end of the line. See Hasty v. Broglin, 531 N.E.2d 200 (Ind. 1988) (no judicial review available). In those states in which review is possible, it is far from plenary. See Peckham, 601 N.W.2d at 290 (factual determinations are conclusive if supported by "any reasonable view of the evidence"); South, 413 N.E.2d at 525 (judicial review is deferential and limited to determining whether a prisoner's constitutional rights have been violated). The possibility of limited judicial review does not, in our view, convert the prisoner's administrative detention into something that arises from process issued by the state court. Rather, it arises from the prison disciplinary proceeding and receives limited review by the state court. In states like Indiana, the state court never becomes involved at all.

There is good reason to accord greater finality to state court proceedings, where the full range of procedural protections for a defendant apply, than to prison disciplinary proceedings. And even if there would be equally compelling reasons to write the statute to cover both detentions arising from process issued by a state court and process issued in connection with an internal prison disciplinary proceeding, this is

not what Congress did. If it was an oversight, it is one that can easily be corrected in amendatory legislation. But until then, we see no statutory authorization for imposing the CA requirement on appeals in which the complained of detention does not arise from process issued by a state court. We note that this conclusion does no more than maintain a certain consistency between the procedures applicable to state prisoners and those applicable to federal prisoners, because it is now well established that the CA requirement does not apply to appeals in sec. 2241 cases. Bush v. Pitzer, 133 F.3d 455, 456 (7th Cir. 1997); Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (listing cases). Administration of this rule will be straightforward for the district courts: they need only ascertain the source of the detention (state court process or something else), and the need or not for a CA will be apparent./5 We therefore hold that Finfrock may proceed with his appeals despite the district courts' decisions to deny the CAs.

In so holding, we recognize that the regime governing certificates of appealability will reflect precisely the distinction between actions relating to the original criminal proceeding and those relating to disciplinary proceedings (or other sources of detention) that we have rejected in Part III of this opinion for purposes of the PLRA. We believe that any tension that may result between the two holdings is, however, more apparent than real. In Part III we addressed the question whether habeas corpus actions should or should not be considered as "civil actions" and thus come under the gate-keeping rules of the PLRA. We decided that Supreme Court precedents, the nature of the special gate-keeping rules that Congress has established for habeas corpus actions, the reasoning of our sister circuits, and the desirability of eliminating a conflict on such a technical matter all lead to the conclusion that for this purpose no distinction should be drawn between different types of habeas corpus actions.

Part IV turned to the internal management of habeas corpus actions. On the federal side, as we noted, different statutes govern challenges to a

prisoner's original conviction and other challenges to custody: 28 U.S.C. sec. 2255 for the former, 28 U.S.C. sec. 2241 for the latter. For these cases, Congress has stipulated that the CA requirement applies only to sec. 2255 cases. For state prisoners, the governing law is sec. 2254. We have concluded that the plain language of 28 U.S.C. sec. 2253(c)(1)(A) requires us to follow rules for CAs in sec. 2254 cases that mirror the rules applicable to federal prisoners. This should not be difficult for the district courts to administer, particularly given the experience they already have in distinguishing between sec. 2255 and sec. 2241 cases. Furthermore, the fact that the source of detention matters for the internal management of habeas corpus actions does not compel the conclusion (in the face of the precedents we have discussed in Part III) that the source of detention matters when we are deciding whether habeas corpus actions in general are the kind of "civil action" addressed by the PLRA. As we noted before, this is nothing but a conclusion on our part about the way various statutes should be interpreted. It is therefore amenable to legislative adjustment or correction, if Congress believes a different or better system should be implemented. At present, however, it is the system we have and the one the courts must follow.

V

  Before setting forth our dispositions of the two cases before us, we summarize briefly the holdings in this case, in the hopes that this will assist both the district courts and counsel in their administration of this complex area of the law. In Part II of this opinion, we conclude that state prisoners who are challenging the results of prison disciplinary proceedings must proceed under 28 U.S.C. sec. 2254, not 28 U.S.C. sec. 2241./6 Part III of this opinion holds that the requirements of the PLRA do not apply to properly characterized habeas corpus actions, whether they are brought under sec.sec. 2241, 2254, or 2255, because those actions are not "civil actions" within the meaning of the PLRA. Last, Part IV holds that the requirement of a CA imposed by 28 U.S.C. sec. 2253(c)(1)(A) does not apply to a state prisoner's action under sec. 2254 that challenges the result of a prison

disciplinary hearing, because the specific (additional) detention that is the focus of such a challenge does not arise out of "process issued by a State court." With these principles in mind, we turn once again to the two cases on appeal.

A. Walker v. O'Brien

In Walker's two cases, the dispute about the underlying merits of his obligation to pay for the damaged door has been resolved and he no longer challenges any other aspects of the district court's rulings. However, the dispute over his obligation to make payments to the court remained to be determined here, and we have concluded that the PLRA does not apply to his cases. This conclusion means that neither the initial filing of this action nor the filing of the appeals may count as a "strike" for purposes of sec. 1915(g). Nevertheless, both our conclusion about the right of the court to insist on some payment of fees wholly apart from the PLRA, and Walker's own failure, in No. 96-4010, properly to contest the district court's finding of a lack of good faith means that his request for a refund of the $105 he paid in that appeal must be rejected. Our finding that the PLRA does not apply also means that neither this court nor the district court is required to take steps to collect the filing fees Walker has not paid. Now that all outstanding issues in Walker's cases have been resolved, the appeals in Nos. 96-4010 and 98-1328 are DISMISSED.

B. Finfrock v. Hanks

In Finfrock's five cases, the fact that the PLRA does not apply means that Finfrock is entitled to seek IFP status despite having three "strikes" under 28 U.S.C. sec. 1915(g), and that if IFP is granted he will not be subject to the PLRA's fee assessment and collection mechanism. Moreover, in light of our conclusion that the CA requirement does not apply to habeas corpus actions challenging prison disciplinary decisions, Finfrock may pursue appeals in his cases without obtaining a CA. Because the district courts in Finfrock's cases applied the wrong standard in determining whether his appeals were taken in good faith, however, cases No. 97-3792, 97-3797, 97-3798, 97-3799, and 97-3800 are

REMANDED to those courts so that they can apply the correct standard and make an initial decision whether Finfrock may proceed IFP on appeal.

/1 Both Newlin and Thurman addressed many other questions pertaining especially to the PLRA. As we explain in more detail below, this opinion is limited to the single aspect before us in these cases.

/2 In a stipulation filed with this court on November 19, 1998, the parties agreed that the Bureau of Prisons has adjusted the amount due from $1245 to $593. The lower number reflects the actual cost the government incurred in repairing the door. Walker has been making payments against this debt through deductions from his prison account.

/3 We doubt seriously that Finfrock is entitled to pursue No. 97-3800, the one appeal that does not involve a punishment affecting the length of his custody, but rather involves a punishment affecting only the place of his confinement (segregation vs. general population). First, it is questionable whether habeas corpus is the appropriate procedure for challenging this sort of punishment. See Sylvester v. Hanks, 140 F.3d 713, 714 (7th Cir. 1998). Second, under Sandin v. Conner, 515 U.S. 472, 483-87 (1995), it is unlikely that Finfrock has a protectible liberty interest in avoiding segregation, a requirement for any due process claim. See Wagner v. Hanks, 128 F.3d 1173, 1177 (7th Cir. 1997). Nevertheless, since these issues have yet to be briefed, we only mention them here.

/4 We emphasize that the action must be a proper habeas corpus action. Our ruling is not intended in any way to suggest that the district courts should not look beyond the label the petitioner attaches to his pleading to ensure that the proper procedural regime is followed. See generally Pischke v. Litscher, 178 F.3d 497, 500 (7th Cir. 1999) (discussing when habeas corpus is appropriate and whether a mislabeled action should be converted or dismissed).

/5 Likewise, the clerk of the district court, who administers the collection of filing fees, is directed to stop using the procedure outlined in 28 U.S.C. sec. 1915(b)(2) to collect unpaid portions of filing fees owed by prisoners in habeas corpus actions. Requests by prisoners for refunds of their appellate fees, however, will not be entertained since "every litigant has the legal responsibility to pay the filing and

docketing fees to the extent feasible." Longbehn v. United States, 169 F.3d 1082, 1083 (7th Cir. 1999). A court has it within its discretion to insist that litigants proceeding IFP in non-PLRA cases must nonetheless pay a fee commensurate with their ability to do so. Id. at 1083-84. And it seems to us clear that, by definition, a prisoner was able to pay anything that he or she has already paid.

/6 We recognize that this conclusion might be thought to conflict with the decision of the Tenth Circuit in Montez v. McKinna, 208 F.3d 862 (10th Cir. 2000). The Montez court held that state prisoners who are challenging the execution of their sentence must use 28 U.S.C. sec. 2241, in the context of a challenge to a decision by Wyoming prison authorities to move the plaintiff from a state operated prison in Wyoming to a privately operated facility in Texas and from the Texas facility to a private Colorado facility. It also held that state prisoners were required to obtain a CA in order to appeal such a case. That decision, of course, dealt directly with the way the state authorities chose to implement a particular sentence, rather than with the adjudication of a particular dispute that affected the length of incarceration. Montez therefore may be distinguishable in any event from our case, but we note the potential conflict because of the breadth of some of the language the court used.

 Easterbrook, Circuit Judge, with whom Posner, Chief Judge, and Manion, Circuit Judge, join, dissenting from the denial of rehearing en banc. The panel announces two important decisions: that collateral attacks on prison discipline are not "civil actions" for the purpose of the Prison Litigation Reform Act (Part iii); and that state prisoners who want to appeal adverse decisions in cases about good-time credits do not need certificates of appealability, despite 28 U.S.C. sec.2253(c), part of the Antiterrorism and Effective Death Penalty Act (Part iv). We should consider these issues en banc, for several reasons.

The panel has established ground rules for a substantial body of prisoners' suits, easily more than a hundred annually in this circuit.

The issues are important qualitatively as well as quantitatively. When must prisoners pay to litigate? May

decisions rejecting frivolous collateral attacks be appealed as of right?

Part iii of the panel's opinion overrules Part iii of Newlin v. Helman, 123 F.3d 429, 437-38 (7th Cir. 1997), while Part iv creates a conflict among the circuits.

The panel's opinion is internally contradictory. (i) Part ii.b holds that collateral attacks about good-time credits concern "a person in custody pursuant to the judgment of a State court" (sec.2254(a)), yet Part iv holds that these same collateral attacks do not concern a "proceeding in which the detention complained of arises out of process issued by a State court" (sec.2253(c)(1)(A)). (ii) Part iii is justified in large measure by the desirability of eliminating a conflict among the circuits, yet Part iv creates a new conflict. (iii) The panel asserts in Part iii that it is too difficult to distinguish between collateral attacks on convictions and collateral attacks on prison discipline when assessing fees, yet Part iv draws exactly this line for purposes of certificates of appealability. (iv) Part iv invokes a plain-meaning approach to interpretation, while Part iii disdains the statutory text.

Both of the panel's principal holdings are substantively questionable, for reasons that I now set out.

  Part III holds that the plra's fee-collection mechanism (indeed, the whole plra) does not apply to any application for collateral relief. The critical text is 28 U.S.C. sec.1915(b) (1), which says that "if a prisoner brings a civil action or files an appeal in forma pauperis" then part of the filing fee must be prepaid, and the rest must be collected over time from prison trust accounts. Other features of the plra also apply only to "civil actions." Is a petition for a writ of habeas corpus a "civil action"? We have been told authoritatively that the answer is "yes." Browder v. Director, Department of Corrections, 434 U.S. 257, 269 (1978); United States v. Morgan, 346 U.S. 502, 505 & n.4 (1954). Is an appeal from the denial of a petition for collateral relief an "appeal in forma pauperis"? Surely yes, when the prisoner seeks to proceed in forma pauperis. What could an appeal in forma pauperis be, other than "an appeal in forma

pauperis"?

Collateral attacks are civil actions. Browder holds this (the Court wrote that "[i]t is well settled that habeas corpus is a civil proceeding"), and if that were not enough 28 U.S.C. sec.1914(a) demonstrates it: "The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $150, except that on application for a writ of habeas corpus the filing fee shall be $5." Prison discipline and ensuing collateral attacks are not criminal prosecutions, so they must be "civil actions." See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (remarking, in a case involving good-time credits, that "[p]rison disciplinary proceedings are not part of a criminal prosecution"); Baxter v. Palmigiano, 425 U.S. 308 (1976). If we define the phrase "civil action" in sec.1915(b) the way Congress did in sec.1914(a), a statute treating collateral attacks as a subset of all civil actions, then application of the plra follows directly.

Lawsuits arising out of prison discipline are a principal target of the plra. Should it make any difference for this purpose whether a warden revokes 30 days of good-time credits or puts the prisoner in segregation for six months (which also may prevent the prisoner from earning new good-time credits)? Not under the language of sec.1915(b), and not for functional purposes either, yet under Part iii of the panel's opinion the warden's choice of sanction determines whether the prisoner must prepay partial filing fees and whether prior frivolous suits require prepayment of the full filing fees, as sec.1915(g) requires. (Because sec.1915(g) treats any frivolous proceeding as a "strike," I take it that even under the panel's approach three frivolous collateral attacks would require prepayment of the filing fees in any future "civil action or appeal [of] a judgment in a civil action".)

Part iii of the panel's opinion does not take the language of sec.1915(b) seriously; it mentions the phrase "civil action" only in passing and the phrase "appeal in forma pauperis" not at all. The panel conceives the issue as whether a collateral attack arising out of the deprivation of good-time credits differs, for purposes of sec.2254, from a collateral attack arising out of a conviction or sentence. Relying on cases such as Preiser and Balisok, the panel answers "no." I agree with that answer--but it is an answer to an irrelevant question, for we must decipher the meaning of "civil action" in

sec.1915(b) rather than the nature of actions under sec.2254. Nothing in Preiser or Balisok concerns the meaning of "civil action . . . in forma pauperis" or "appeal in forma pauperis" in sec.1915(b); we have to define these ourselves rather than attribute a definition to cases concerning other issues.

To understand why Part iii of Newlin held that collateral attacks on prison discipline are "civil actions" under sec.1915(b), one must begin with Martin v. United States, 96 F.3d 853 (7th Cir. 1996). Martin allowed that petitions for habeas corpus "are technically civil proceedings and so come within the literal scope of the Act." 96 F.3d at 855. But Martin also observed that changes made by the aedpa contemporaneously with the plra subject applications for writs of habeas corpus to a special regimen. For example, under the plra three frivolous suits block further civil filings and appeals in forma pauperis, sec.1915(g), while the aedpa limits second or successive filings via sec.2244(b). As the panel wrote in Martin, 96 F.3d at 856, "by drastically curtailing the filing of second or successive applications of [sic] habeas corpus, the antiterrorism law addressed in the context of habeas corpus the same concern with groundless litigation that informs the Prison Litigation Reform Act and tailored its response to that context." Because the principal office of sec.2254 and sec.2255 is "to upend a criminal judgment" (96 F.3d at 855), Martin concluded that collateral attacks on criminal convictions and sentences should be grouped with criminal rather than civil proceedings for the purpose of sec.1915(b) and (g). In other words, Martin holds that collateral attacks should be treated the same way as the judgment being contested.

But prison discipline is not a criminal proceeding; Wolff and Baxter hold that it is civil in nature, and that norms of the criminal process (such as the right to counsel) do not apply. If under Martin a collateral attack is treated (so far as the plra is concerned) as a continuation of the decision being challenged, then a collateral attack on prison discipline is civil rather than criminal. Part iii of Newlin so holds, which means that petitions for habeas corpus arising from prison discipline are "civil actions" for purposes of sec.1915(b), just as they are for purposes of sec.1914(a), Fed. R. App. P. 4(a), and many other statutes and rules.

Part iii of the panel's opinion does not come to grips with the language of the plra, the reasons Martin read that language non-literally, and the reasons Newlin gave for declining to extend the non-literal reading to other uses of

habeas corpus. Nonetheless, I am content with the outcome of Part iii (rather, would be content if the panel applied the same approach to Part iv). That other circuits have followed Martin to the limit is important--we should get rid of procedural conflicts to the extent we can do so with intellectual honesty, see Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000); United States v. Hill, 48 F.3d 228, 231-32 (7th Cir. 1995)--and the line between Martin and Newlin can be elusive. Handling claims and collections under the plra has not been easy, and stubborn adherence to a complicating factor that has not won support elsewhere has little to commend it. Except for the fact that Part iv of the panel's opinion reintroduces this very complication, creating a new conflict among the circuits in the process!

Part IV holds that state prisoners who want to appeal adverse decisions in cases about good-time credits do not need certificates of appealability. Only prisoners seeking to appeal from the rejection of challenges to their convictions or sentences need certificates of appealability, the panel concludes. This distinction between challenges to convictions and challenges to prison discipline is exactly the line drawn (for purposes of sec.1915) by Newlin, and overruled by Part iii of the panel's opinion as both unprincipled (given Preiser and Balisok) and too difficult to implement. If this line is incompatible with Higher Authority and causes administrative headaches, and therefore is a Bad Thing in Part iii, it is still a Bad Thing when we arrive at Part iv.

When statutes leave no leeway, we must tolerate Bad Things. This is the claim of Part iv: that the statute leaves no room for maneuver. A state prisoner needs a certificate of appealability only when appealing from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court". 28 U.S.C. sec.2253(c)(1)(A). See also Fed. R. App. P. 22(b)(1). A prisoner who contests the deprivation of good-time credits is complaining about an administrative rather than a judicial decision. The panel remarks (slip op. 20): "In light of the statutory language, we do not see how we can construe the words 'process issued by a State court' to mean 'process not issued by a State court, but instead the outcome of an internal prison disciplinary proceeding.'" Claiming to act under the compulsion of plain statutory language, the panel disagrees with other circuits, which have held that state prisoners need certificates of appealability to obtain review of any decision under sec.2254. See, e.g., Montez v. McKinna, 208 F.3d 862, 866-

69 (10th Cir. 2000); Hallmark v. Johnson, 118 F.3d 1073, 1076 (5th Cir. 1997). Section 2253(c)(1)(A) descends from sec.2253 para.3 (1994 ed.), which required prisoners to obtain "certificates of probable cause" to appeal, and courts considering the question uniformly have held or assumed that prisoners who sought restoration of good-time credits needed certificates of probable cause. See, e.g., Crowell v. Walsh, 151 F.3d 1050 (D.C. Cir. 1998); Lemieux v. Kirby, 931 F.2d 1391 (10th Cir. 1991). All of the Justices who wrote or joined opinions in Davis v. Jacobs, 454 U.S. 911 (1981), assumed that this is so. And the D.C. Circuit, at least, has linked the definition of "civil action" under sec.1915(b) to the need for a certificate of appealability (or probable cause) under sec.2253. It held in Crowell and Blair-Bey v. Quick, 151 F.3d 1036 (D.C. Cir. 1998), that when application of sec.1915(b) is excused in a collateral attack, application of sec.2253(c) is essential. Our panel approves Blair-Bey (slip op. 3) yet ignores Crowell, though these companion opinions represent two sides of the same coin.

The panel does not cite, and I could not find, any appellate decision holding that a state prisoner does not need a certificate of appealability (or did not need a certificate of probable cause) to appeal from the denial of a request for post-conviction collateral relief. The panel's assertion, slip op. 21, that "it is now well established that the ca requirement does not apply to appeals in sec.2241 cases" is not correct. The cases cited for this proposition, Bush v. Pitzer, 133 F.3d 455, 456 (7th Cir. 1997), and Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999), address collateral attacks by federal prisoners. Section 2253(c)(1)(A) is limited to state prisoners' collateral attacks; it is sec.2253(c) (1)(B), not sec.2253(c)(1)(A), that controls federal prisoners' need for certificates of appealability, and sec.2253(c)(1)(B) covers only "the final order in a proceeding under section 2255." After the panel's opinion, the seventh circuit becomes a minority of one in the interpretation of sec.2253(c)(1)(A).

If textualist interpretive methods are essential, as Part iv proclaims, then what happened in Part iii? Petitions for habeas corpus "are technically civil proceedings and so come within the literal scope of the Act." Martin, 96 F.3d at 855, echoed at slip op. 18. A textual approach, consistently applied, would require us to overrule Martin, not Newlin, and to include all collateral attacks within the plra's scope. Why give a pragmatic reading to the plra in Part iii, then switch to textualism in Part iv? Not

for pragmatic reasons; the approaches yield diametrically opposed answers to a functionally identical question.

Part iv is at war with Part ii.b of the panel's opinion as well as with Part iii. In Part ii.b the panel holds that a petition for a writ of habeas corpus filed by a prisoner who wants good-time credits restored is covered by sec.2254 because it is a proceeding "in behalf of a person in custody pursuant to the judgment of a State court". 28 U.S.C. sec.2254(a). The panel holds that one may be "in custody pursuant to the judgment" without needing to attack that judgment. Slip op. 11-12. Just so for sec.2253(c). "[T]he detention complained of arises out of process issued by a State court" (emphasis added) even if the prisoner does not challenge the state court's process. If challenges to good-time credits proceed under sec.2254 because the words "in custody pursuant to the judgment of a State court" refer to the genesis of the custody rather than the claim made in the collateral attack, then the words "detention complained of arises out of process issued by a State court" also must refer to the genesis of the custody rather than the claim made in the collateral attack. If Part ii.b is right, then Part iv is wrong.

Part ii.b has it right. Finfrock's detention "arises out of process issued by a State court". He has been convicted; his conviction and sentence are essential to his custody. Revocation of good-time credits does not extend a prisoner's sentence; instead this decision (like the denial or revocation of parole, or demotion to a lower credit-earning class) requires the prisoner to serve more of the original sentence. But the detention has been authorized by (that is, arises out of) the conviction and sentence (that is, process issued by a state court). Section 2253(c)(1)(A) deals with detention (= custody) that depends on a state-court order; it is not limited to attacks on that order. A prisoner who protests the revocation of good-time credits is appealing "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" and therefore needs a certificate of appealability. The reading offered here is the one the tenth circuit adopted in Montez, deeming it an inevitable rendition of the statute's language. Part iv makes a plain-language claim the other way. My colleagues and the tenth circuit thus agree on one thing: that sec.2253(c)(1)(A) is clear. They just don't agree on what it means, a sign that the language may not be so plain after all.

The difference between sec.2254(a) ("application . . . in behalf of a person in custody pursuant to the judgment of a State court") and sec.2253(c)(1)(A) ("proceeding in which the detention complained of arises out of process issued by a State court") is not a linguistic quirk or oversight. Prisoners may seek writs of habeas corpus before conviction--perhaps to test the validity of pretrial custody (the Great Writ, dealing with excessive detention by executive officials), perhaps to test extradition to another jurisdiction for trial. A state prisoner who applies for such a writ and does not get it needs a certificate of appealability, because he is in "detention [that] arises out of process issued by a State court". But such a prisoner has not been convicted and therefore need not satisfy sec.2254 or any other restriction on actions by persons "in custody pursuant to the judgment of a State court". The distinction is both historical and sensible. Until the latter half of the twentieth century no state prisoner could obtain collateral review following conviction by a court of competent jurisdiction, and federal law still makes it difficult to wage a collateral attack on the final judgment of a state court. But sec.2253(c)(1)(A) is more general, applying to all whose custody can be traced to state judicial process, such as an arrest warrant or indictment. The panel supposes that sec.2254(a) is broader than sec.2253(c) (1)(A), but this is backward. Section 2253(c)(1)(A) applies before trial, in extradition cases, and after judgment too, including claims of convicts required to serve more of their sentences than they think they should.

Any reading of sec.2253(c) other than the one urged here and adopted in Montez produces an anomaly: a prisoner who challenges 100% of his prison time (by attacking a conviction or sentence) needs a certificate of appealability and is likely to be turned away without an appellate decision on the merits, for only a fraction of appellants make the necessary "substantial showing of the denial of a constitutional right" (sec.2253(c)(2)). See Slack v. McDaniel, 120 S. Ct. 1595 (2000). But a prisoner who challenges only 1% or 5% of his prison time is guaranteed an appellate decision on the merits. Whatever sense may lie behind this eludes me.

There isn't any uniform, or uniformly happy, solution to coverage issues under the aedpa. Federal prisoners' collateral attacks on deprivations of good-time credits arise under sec.2241, so they do not need certificates of appealability. But differences in the statute's treatment of state and federal prisoners do not

justify departing from sec.2253(c) (1)(A), or for that matter from sec.1915(b), when we must decide exactly how state prisoners' petitions must be handled. These complex statutes govern hundreds of cases annually. It is worth the full court's time to ensure that the issues I have discussed are decided correctly.